89 N.J. Super. 358 (1965)
215 A.2d 51
NEW JERSEY STATE BOARD OF ARCHITECTS, PLAINTIFF-APPELLANT,
v.
EARL ARMSTRONG, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 1965.
Decided December 1, 1965.
Before Judges GAULKIN, LABRECQUE and BROWN.
*359 Mr. Peter J. Schwartz, Deputy Attorney General, argued the cause for the plaintiff (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
No appearance for the defendant.
The opinion of the court was delivered by GAULKIN, S.J.A.D.
In an opinion reported in 85 N.J. Super. 22 (Cty. D. Ct. 1964) the trial court ruled that defendant Armstrong had not violated N.J.S.A. 45:3-1 et seq. relating to the licensing of architects, and plaintiff board appeals. We reverse.
Defendant, who is not a licensed architect, drew the plans for a combination dwelling, cocktail lounge and tavern which he thereafter erected. The dwelling portion, consisting of a bedroom, living room, kitchen and bath, is occupied by defendant and his wife. The tavern and cocktail lounge is operated by them and consists of a dining room seating about 120, a barroom seating about 20, and a kitchen and auxiliary rooms. The entire building is about 40' x 80'.
N.J.S.A. 45:3-10 provides:
"Any person who shall pursue the practice of architecture in this State, or shall engage in this State in the business of preparing plans, specifications and preliminary data for the erection or alteration of any building * * * without a certificate * * * to practice architecture * * * shall be liable to a penalty of not less than $200.00, nor more than $500.00 for the first offense * * *.
Any single act or transaction shall constitute engaging in business or the practice of architecture within the meaning of this chapter.
Nothing herein contained shall prohibit * * * any person in this State from acting as designer of any building that is to be constructed by himself for his own occupancy or occupancy by a member or members of his immediate family * * *."
See generally Annotation What amounts to architectural or engineering services within license requirements," 82 A.L.R.2d 1013 (1962); Annotation "Single or isolated transactions as falling within provisions of commercial or occupational licensing requirement," 93 A.L.R.2d 90 (1964).
*360 The trial court held that "The statutory exception contemplates possession by the designer for whatever lawful purpose he may choose." It held, in effect, that it was not even necessary for Armstrong to live in the premises, so long as he intended, when he designed the building, that he or some member of his immediate family was to operate the tavern and cocktail lounge. That would be equally true if the building were a supermarket, a department store or a theatre, no matter how large, so long as defendant or some member of his immediate family operated it.
It seems to us that a major purpose of this statute is to protect the safety of the public. The construction placed upon it by the trial court would go a long way toward depriving the statute of that effect.
"Although, generally speaking, penal statutes are to be strictly construed, State v. Meinken, 10 N.J. 348 (1952), the rule of strict construction does not mean that the manifestations of the Legislature's intention should be disregarded." State v. Edwards, 28 N.J. 292, 298 (1958). See also State v. Congdon, 76 N.J. Super. 493, 500 (App. Div. 1962); 2 Sutherland, Statutes and Statutory Construction (3d ed. Horack 1943), §§ 4501-4510. "A statute will not be construed so as to reach an absurd or anomalous result." Robson v. Rodriquez, 26 N.J. 517, 528 (1958); La Polla v. Board of Chosen Freeholders, 71 N.J. Super. 264, 275 (Law Div. 1961).
It is true that the statute is poorly drawn, and that a literal reading of it might support the appealed construction. However, it is a commonplace that often the surest way to misconstrue a statute is to read it literally. That, we think, would be the result here.
If the Legislature intended that construction, why the reference to "occupancy by a member or members of his immediate family"? Such language usually is used, as, for example, in insurance policies, to mean buildings totally or at least mainly so inhabited, and we think it obvious that that was what the Legislature meant.
*361 Most similar licensing statutes throughout the country make the exception inapplicable to "buildings intended for the mass assemblage of people," Ala. Code tit. 46, c. 2, § 9; Fla. Stat., § 467.09; Ga. Code, § 84-321; cf. Ark. Stat., tit. 71, c. 3, § 302, La. Rev. Stat., tit. 37, § 160; or limit the exception to buildings "not for sale, rental or use by the public," Ariz. Rev. Stat., § 32-144; Ill. Ann. Stat., c. 10 1/2, § 4; or to buildings "intended solely for private use," Colo. Rev. Stat., § 10-1-17, or otherwise make it clear that the exception applies only when the designer risks only himself and his family. N.J.S.A. 45:3-10 does not make that clear, but the purpose to protect the public is so obvious, and opening the door in the fashion sought by defendant would lead to such emasculating and absurd results, that we have no doubt that the intent of the Legislature was as we have stated, and that the words of the statute are sufficient to express that intent.
The judgment is therefore reversed and the case is remanded to the county district court for further proceedings consistent with this opinion.