712 A.2d 1281

STATE OF NEW JERSEY, PLAINTIFF v.
RICHARD FRENCH, DEFENDANT.

Superior Court of New Jersey
Law Division
(Criminal)
Essex County

July 9, 1997.

*Clifford J. Minor,* Essex County Prosecutor (*Joseph Smyth,* attorney) for plaintiff.

*Michael Marucci,* Public Defender for Essex County, (*Elaine Wladyga,* attorney) for defendant.

FAST, J.S.C.

## PROCEDURAL BACKGROUND

On August 21, 1996, defendant was sentenced in a Municipal Court for the commission of several offenses, all committed on July 17, 1996;

1. Criminal Trespass [Complaint W 1996–993] (for which he was sentenced to 180 days in the County Jail),

2. Possession of Burglar's Tools [Complaint S 1996–1217, Count 1] (for which he was sentenced to 180 days in the County Jail, consecutive to the Trespass charge),

3. Possession of Burglar's Tools [Complaint S 1996–1217, Count 2] (for which he was sentenced to 180 days in the County Jail, concurrent with Count 1 of the same Complaint),

4. Theft, as a Disorderly Person's offense, [Complaint W 1996–1110] (for which he was sentenced to 180 days in the County Jail, consecutive to the sentences imposed on both counts of W 1996–1217), and

5. Criminal Trespass [Complaint W 1996–1109] (for which he was sentenced to 180 days in the County Jail, concurrent with the sentence imposed on count 1 of W 1996–1110).

Likewise, he was sentenced on that same date to an additional period of incarceration, for 180 days consecutive to W 1996–1109, based on a violation of probation on Complaint W 1995–1614[1].

Because several of these sentences were to be served consecutively and totalled 720 days, defendant was required to serve them in State prison. *N.J.S.A.* 2C:44–5a(i).

---

[1] Defendant was not entitled to a gap time credit at this point because there had been no prior imprisonment for any offense committed before that date; i.e., all sentences of imprisonment in the Municipal Court were imposed on the same date.

Defendant was sentenced on the instant indictment on April 3, 1997 for burglary (in the 3rd degree) that was committed on July 12, 1996. The sentence was a term of four years in the State prison, to run concurrent with the Municipal Court sentences. At the time of this sentencing, defendant was still serving time in State prison for the sentences imposed in the Municipal Court.

## STATEMENT OF THE ISSUE

Following the sentencing, defendant moved for a credit of 225 days against his four year sentence, pursuant to *N.J.S.A.* 2C:44–5b(2), commonly called "gap time," for the time served in imprisonment, to wit, the period between the date of imprisonment on the municipal sentencing (August 21, 1996) and the date of sentencing on the subject indictable offense (April 3, 1997).

The issue is whether defendant is entitled to that gap time credit. More specifically, the issue in this case is whether the gap credit should be awarded for time served in imprisonment on offenses which are non-indictable offenses, when the earlier sentence was imposed in a Municipal Court.

There is no reported decision on the allowance of a gap time credit for time served on a sentence imposed in a Municipal Court.

## DISCUSSION OF LAW

*N.J.S.A.* 2C:44–5 provides that:

b. Sentences of imprisonment imposed at different times. When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense [2] committed prior to the former sentence, other than an offense committed while in custody;

. . . .

(2) Whether the court determines that the terms shall run concurrently or consecutively, the defendant shall be credited with time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be served.

---

[2] An "offense" is a "crime, a disorderly persons offense or a petty disorderly persons offense..." *N.J.S.A.* 2C:1–14(k).

■ The statutory language is deceptively simple. The application of the language presents the quandaries, notwithstanding that the language of the statute may appear to be clear. That is why gap time credits have been described as 'a riddle wrapped in a mystery inside an enigma.' *State v. Edwards*, 263 *N.J.Super.* 256, 262, 622 *A.2d* 919 (App.Div.1993).

> The general purpose behind the provision is to avoid the manipulation of trial dates to the disadvantage of defendants and to put defendants in the same position that they would have been 'had the two offenses been tried at the same time.' *Model Penal Code, supra,* sec. 7.06 commentary at 278.

*Booker v. New Jersey State Parole Bd.*, 136 *N.J.* 257, 260, 642 *A.2d* 984 (1994).

The dissent by Justice Stein, in *Booker* at page 274, 642 A.2d 984, said that:

> The most reasonable interpretation that I can ascribe to the gap-time provision in our Code is one that insures that a defendant's exposure for multiple offenses committed prior to the imposition of a sentence on those offenses will not be affected by the number and timing of the sentencing proceedings. That purpose is furthered by applying the gap-time credit to the front end of a subsequently-imposed concurrent sentence, and not crediting gap time to a subsequently imposed consecutive sentence.[3]

■ According to the statutory language of 2C:44–5b(2), gap time shall be credited when the following criteria have been met [4]:

(1) A defendant has already been sentenced to a term of imprisonment,

(2) The defendant is subsequently sentenced to another term of imprisonment, and

(3) Both offenses were committed prior to the imposition of the first sentence.

This may be visualized by the following "timeline":

|   |   | ***************** |   |
|---|---|---|---|
| 1 | 2 | 3 | 4 |

# 1 & # 2 represent the commission of offenses. Based on the

---

[3] In that opinion (at page 268, 642 A.2d 984), Justice Stein also said in his concurrence-dissent: "The Court today struggles to construe a statute the purpose and meaning of which continue to confound judicial efforts to apply it.... uncertainty ... clouds its application."

[4] *State v. Richardson*, 208 *N.J.Super.* 399, 414, 506 A.2d 43 (App.Div.1986).

language of the statute, both the chronology and grade [5] of the offenses are irrelevant, although both offenses must have been committed before imposition of the first sentence (# 3).

# 3 represents the date of imposing the first sentence, which may be for either offense # 1 or # 2.

# 4 is the date of imposing the second sentence; this is when the calculation of gap time must be made by the sentencing court. *Booker, supra,* at page 265, 642 A.2d 984. (It must be the later sentencing date; there will have been no interval at the sentencing on the first offense, even though the second offense will have been committed before the first sentencing.)

■  The gap period is represented by the interval between # 3 and # 4, shown on the timeline as ******************. That is the period during which the defendant was incarcerated after, and attributable to, the first sentence [6].

---

[5] That is, the *"base term"* of the sentence is not material. The longer term of imprisonment may be imposed at either point 3 or point 4. Emphasis is put on the phrase "base term" because a gap time credit does not affect parole ineligibility during the period of parole ineligibility. *Booker v. New Jersey State Parole Bd., supra,* at page 261, 642 A.2d 984.

[6] If three offenses were committed before the sentence was imposed on any of those three, and if the defendant meets the criteria stated above, and those three offenses were sentenced at three different times, query whether the third sentence would entitle the defendant to a gap credit for the period since the second sentence (at which the defendant presumably would have gotten a credit for the time since the first), or whether the third sentencing should include a gap credit for the period since the first sentencing. This may be compared with a jail credit (*see Booker* at page 226, 642 A.2d 984) which is permissible only when that credit is for the time spent in incarceration on the *subject offense.* That is, to give a gap credit at the third sentencing for the period since ·the first sentencing would be to duplicate the credit given for the period between the first and second sentences (assuming that it had been credited at that second sentencing.) This result would appear to be a type of "double counting" and beyond the spirit and language of the gap statute. *See also, State v. Edwards,* 263 *N.J.Super.* 256, 264, 622 A.2d 919 (App.Div.1993) as to "an impermissible double benefit."

The "riddle" is to be found in the application of the statute in individual cases.

■ One riddle must be answered in this sentencing: are Municipal Court sentences to be considered in determining the allowance of a gap-time credit? Because this is an issue otherwise unreported, an analysis of other cases involving gap-time credits, as well as the statutory language and perceived legislative purpose, must be undertaken. "When a statutory term is subject to more than one interpretation, we look beyond its plain language to determine the Legislature's intent." *State v. Bridges*, 131 *N.J.* 402, 407, 621 *A.*2d 1 (1993).

Quoting the statute above and citing the purpose and interpretation given in *Booker, supra*, however, does not address the underlying issue presented here; that is, whether the gap credit should be given in a sentencing on an indictable crime after a sentencing in a Municipal Court on non-indictable offenses.

Although *Booker* gives cogent reasons for different interpretations of the statute, it dealt with questions relating to whether the sentences were concurrent or consecutive and whether the credit should be applied to the "front end" or aggregate [7] sentence, and how "gap time" applies to parole ineligibility.

In *State v. Guaman*, 271 *N.J.Super.* 130, 133, 638 *A.*2d 162 (App.Div.1994), defendant had been sentenced for two violations of probation, one in Essex County and the other in Bergen County.

---

[7] It would also appear that gap time must be awarded even if the defendant has completed the earlier sentence, that is, before the second sentence (of imprisonment) is imposed. It would accelerate the eligibility date for parole on the sentence remaining to be served; "aggregate" as used in the statute includes "the term or terms remaining to be served." As it was said in *State v. Lawlor*, 222 *N.J.Super.* 241, 245, 536 *A.*2d 766 (App.Div.1988), "It should be noted that service of previously imposed and currently imposed terms need not overlap to entitle a defendant to this credit." The object of the statute, as stated in that case, was "... to prevent a defendant who receives concurrent sentences of imprisonment that could have been imposed at the same time from having to serve more time solely because they were imposed at different times." *Ibid.* Nor would it make any difference which sentence was longer.

Both crimes (and both violations) were committed before the defendant was sentenced on either violation. The first sentence (in Essex) was imposed on April 5, 1990; after that sentence had been completed, the defendant had been held on a detainer until sentenced for the other violation of probation (in Bergen.) The Appellate Division determined that a gap credit should have been granted for the time served in imprisonment on the first sentencing on the violation of probation[8]. The rationale for the credit was that "The interests of justice strongly militate in favor" of the credit; that by reason of the "unseemly delay," the judge imposing the second sentence "was denied the opportunity to impose a truly concurrent sentence[9]." *Id.*, at page 134, 638 *A.2d* 162. No "unseemly delay" appears in sentencing a defendant for an indictable offense after a sentence has been imposed in a Municipal Court.

*State v. Hugley*, 198 *N.J.Super.* 152, 486 *A.2d* 900 (App.Div. 1985) denied a gap time credit to a defendant who fled from New Jersey, thereby preventing the prosecutor from pursuing an indictment through no fault of the prosecutor. That opinion stated that the delay in pursuing that indictment was not the "evil" that

---

[8] It also determined that the defendant would be entitled to a *jail* credit for the time held on the detainer until the second sentencing. It is also informative to note that the gap time credit was calculated based on the interval between the sentences on the violations of probation, rather than the interval between the sentencings on the original crimes. The simple explanation for this is that there was no imprisonment when defendant was sentenced to probation; the periods of imprisonment were imposed on the sentencings for the violations of probation. Those sentences were not for the violations themselves (they were not "offenses"), but on the underlying crimes.

[9] One possible resolution of this problem was suggested in *Richardson v. Nickolopoulos*, 110 *N.J.* 241, 250, 540 *A.2d* 1246 (1988), where the Court said that "We believe that the sentencing flexibility provided under the Code permits necessary adjustments. A judge desiring to afford maximum concurrence of sentences can reduce the base term and, by dispensing with the parole bar, essentially achieve the goal of comparative concurrent sentencing." However, this may not be available when the second sentence is at the bottom of the base term, or when the sentence is imposed pursuant to a plea agreement under *N.J.S.A.* 2C:35–12.

the statute was designed to prevent. *Id.,* at page 157, 486 *A.*2d 900. "This credit, presumably, is intended to deter a prosecutor from 'dragging his heels' in pursuing an indictment when he knows that an inmate is available for a final disposition of an offense." *Id.,* at page 158, 486 *A.*2d 900.

The prosecutor in this case cannot be said to have dragged his heels in failing to have had the defendant sentenced on the indictable crime at the same time that he was sentenced in the Municipal Court.

No aforesaid rationale for the gap credit has been shown in this case, and it could therefore be denied based on logic. The applicable proverb is *"Cessat ratione, cessat lex"*: to cease in reason is to cease in law. However, an argument can reasonably be made that the credit must be allowed based on the simple language of the statute. Specifically, it can be argued, defendant having been sentenced for "offenses" in the Municipal Court, and since he is within the other criteria stated above, that he is therefore entitled to the credit.

This argument can be based on the precepts of *State v. Hugley,* 198 *N.J.Super.* 152, 486 *A.*2d 900 (App.Div.1985), *Richardson v. Nickolopoulos,* 110 *N.J.* 241, 540 *A.*2d 1246 (1988), *State v. Edwards,* 263 *N.J.Super.* 256, 622 *A.*2d 919 (App.Div.1993), *State v. Guaman,* 271 *N.J.Super.* 130, 638 *A.*2d 162 (App.Div.1994), and *Booker v. New Jersey State Parole Bd.,* 136 *N.J.* 257, 642 *A.*2d 984 (1994), all referring to *Model Penal Code* sec. 7.06, the precursor to 2C:44–5b(2). That section refers to *"crimes'* committed prior to the former sentence..." Our statute refers to *"offenses*[10] committed prior to the former sentence..." It may therefore be argued that the Legislature, having substituted such a significant and well defined word, "offenses" for "crimes," must have contem-

---

[10] Cannell, *Criminal Code Annotated,* 1996–1997 Ed., comment 4 to 2C:44–5 also states that: "... when a person is sentenced at different times for two *crimes* ..." He uses the word used in the *Model Penal Code,* rather than the statute, thereby "begging the question" presented in this opinion.

plated the simple object of creating the subject credit for all circumstances within its terms. To "extend" the argument, if the Legislature meant otherwise, it would have retained the word "crimes" instead of changing it to "offenses."

■ However, a literal reading of what has been called by higher courts to be an enigmatic statute would appear to be fraught with problems.

> ... it is a commonplace that often the surest way to misconstrue a statute is to read it literally.

*N.J. State Bd. of Architects v. Armstrong*, 89 *N.J.Super.* 358, 360, 215 *A.*2d 51 (App.Div.1965).

> Where it is apparent that the drafters of a statute did not contemplate a specific situation, ... we must interpret the statute 'consonant with the probable intent of the draftsman had he anticipated the situation at hand.'

*County of Essex v. Waldman*, 244 *N.J.Super.* 647, 656, 583 *A.*2d 384 (App.Div.1990).

It is hard to believe that the drafters of this statute anticipated the situation at hand. If the statute were to be literally interpreted, then the credit also apparently would be applicable when a Municipal Court imposes a sentence of imprisonment after another Municipal Court had also imposed a sentence of imprisonment, both offenses having been committed before the first sentencing [11]. That interpretation would be contrary to the current and prevalent, if not universal, practice of Municipal Courts to impose sentences without first obtaining pre-sentence investigation reports. (These reports are optional with respect to a non-indictable offense, *R.* 7:4–6(a); they are mandatory with respect to indictable offenses, wherever sentenced, *N.J.S.A.* 2C:44–6b and *R.* 7:4–6(a)).

---

[11] Similarly, when a defendant is awaiting sentences of imprisonment in both the U.S. District and State Superior Courts, it is not unusual for a defendant to ask to be sentenced in the District Court first [for reasons that are not material to this opinion, but which presumably benefit the defendant]. It would appear that this also would have been beyond the legislative contemplation (and apparent rationale) and therefore not qualify a defendant for a gap credit on the later sentencing to imprisonment in the state court, although literally within the language of the statute.

The last inquiry with reference to the subject issue is the definition of the phrase "sentences of imprisonment," as used in the statute. The question is whether "imprisonment" requires a sentence to a State prison, or whether it includes a sentence to a County jail.

■ *N.J.S.A.* 2C:43–10, "Place of *Imprisonment*," (emphasis added) refers to both State prisons (i.e., "to the custody of the Commissioner of the Department of Corrections"), to "the penitentiary or workhouse" of a county, 43–10b, and to imprisonment in certain county institutions when for less than one year, 43–10c. No other statute indicates that the word "imprisonment" relates to a particular institution. It appears to be as broad as the word "incarceration." Accordingly, there does not appear to be a particular meaning in this statute to the word "imprisonment." The consequence therefore, to this last inquiry, for purposes of the gap credit statute, is that incarceration in a State prison resulting from a sentence imposed in any court, or any imprisonment imposed in the Superior Court, satisfies the gap credit criterion of "imprisonment."

■ The conclusion, as a matter of fairness in the subject circumstances, in trying to find the elusive purpose of the gap credit statute, is that this defendant, having served his Municipal Court sentence in the State prison, is entitled to the allowance of a gap credit [12].

The judgment of conviction will grant the gap time credit.

---

[12] This issue may be included in the re-consideration (if there be one) by the Legislature that both the Supreme Court and the Appellate Division have so long sought.