809 A.2d 890

STATE OF NEW JERSEY, PLAINTIFF, v.
FRANCISCO RUIZ, DEFENDANT.

Superior Court of New Jersey
Law Division Essex County

Decided July 19, 2002.

*Edward W. Gordon,* Assistant Prosecutor, for the State of New Jersey (Acting Essex County Prosecutor *Donald C. Campolo,* attorney for the State).

*Rubin M. Sinins*, for defendant (*Sinins and Bross*, attorneys)

GOLDMAN, J.S.C.

This case involves *N.J.S.A.* 2C:44–5(b)(2), the so-called "gap-time credit." The facts here are complex, requiring interpretation of a law which even in ordinary cases has been described as "a riddle wrapped in a mystery inside an enigma." *State v. Edwards*, 263 *N.J.Super.* 256, 262, 622 *A.*2d 919 (App.Div.1993). It has also been called a "judicial nightmare" which makes "stolid judges tremble." *State v. Guaman*, 271 *N.J.Super.* 130, 135, 638 *A.*2d 162 (App.Div.1994). Because the statute must be read literally, the court finds that Ruiz is entitled to gap-time credit for two prior sentences of imprisonment although they encompass periods of time that Ruiz' own conduct in hiding a body prevented the State from even knowing that the first crime had been committed.

To minimize the confusion, the facts have been reduced to their minimum. On May 6, 1991, Francisco Ruiz (Ruiz), was paid to dig a hole in the basement of 133 Parker Street, Newark, N.J., for the purpose of burying Elias Lopez (Lopez) after Lopez' planned robbery and murder the next day. On May 7, 1991, Lopez was robbed and murdered as planned, and Ruiz helped bury him in the hole that he had dug. The next day Lopez' girl friend filed a missing person's report with the Harrison, N.J., police. She later went to Puerto Rico in an unsuccessful attempt to find him, and the murder was kept secret for years.

On January 30, 1992, Ruiz was arrested for possession of a controlled dangerous substance (CDS) and resisting arrest. After indictment, Ruiz was sentenced on September 29, 1992, to three hundred sixty-four (364) days in Essex County Jail. He served ninety-one (91) days in custody before his release on parole on December 28, 1992.

On September 17, 1993, Ruiz was arrested for additional CDS offenses. He remained in custody until October 2, 1993, or seventeen (17) days, when he made bail. When Ruiz failed to

appear in court for a conference on May 13, 1994, a bench warrant was issued. He was at large until his capture on April 1, 1998. Ruiz remained in Essex County Jail until February 4, 1999, when he was sentenced to a four (4) year prison term with twenty (20) months of parole ineligibility. He received a total of three hundred twenty-seven (327) days of jail credit. He was paroled on February 9, 2000, after having served an additional three hundred seventy (370) days in prison.

One week after Ruiz was sentenced, the Newark Police Department's Cold Case Unit began its investigation of Lopez' death. Lopez' body was eventually discovered on April 30, 1999, and identified shortly thereafter. On June 16, 2000, Ruiz and others were indicted for conspiracy to commit murder, murder, conspiracy to commit robbery, robbery, felony murder, possession of a weapon, and possession of a weapon for an unlawful purpose. A superseding indictment was returned on December 22, 2000, charging the same offenses.

On March 1, 2002, Ruiz pled guilty to conspiracy to commit murder, aggravated manslaughter, and possession of a weapon for an unlawful purpose in connection with Lopez' 1991 murder. Based upon his cooperation and testimony against a co-defendant, the State recommended a sentence of ten (10) years with a period of parole ineligibility of three and one-third (3⅓) years.

Ruiz claims he is entitled to gap-time credits for the following periods of time:

1. The time Ruiz served in Essex County Jail from the date of his September 29, 1992, sentence until he was paroled, a period of ninety-one (91) days; and

2. The time Ruiz served in Essex County Jail awaiting disposition of the September 17, 1993, offense, a period of three hundred twenty-seven (327) days; and

3. The time Ruiz served in prison after February 5, 1999, when he was sentenced for the September 17, 1993, offense, until his release on parole on February 9, 2000, a period of three hundred seventy (370) days.

Ruiz' argument is simple. He claims that the literal language of *N.J.S.A.* 2C:44-5(b)(2) requires gap-time credits. The State's counter-argument is equally simple. If, as many cases indicate, the purpose of the gap-time credit is to protect against prosecuto-

rial delay, it would be absurd to reward Ruiz for the delay that he caused by hiding Lopez' body to prevent the State from even knowing that a crime had been committed. The State claims that there was no prosecutorial delay.

The court concludes that Ruiz is entitled to gap-time for the time he served in Essex County Jail following his September 29, 1992, sentence (period # 1 above) and for the time he served in state prison following his February 4, 1999, sentence (period # 3 above). He is not entitled to gap-time for the time served awaiting trial on the September 17, 1993, charges before his February 4, 1999, sentence (period # 2 above). These conclusions derive from a literal reading of the gap-time statute.

*N.J.S.A.* 2C:44-5(b)(2), the statute by which Ruiz claims entitlement to gap-time credit, provides in pertinent part:

(b) When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence, other than an offense committed while in custody;

　　　*　　　*　　　*　　　*　　　*　　　*　　　*　　　*

(2) Whether the court determines that the term shall run concurrently or consecutively, the defendant shall be credited with time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be served.

■ Gap-time applies when a defendant previously sentenced to a term of imprisonment is subsequently sentenced for a different offense that was committed prior to the imposition of the earlier sentence. *State v. Carreker*, 172 *N.J.* 100, 103, 796 *A.2d* 847 (2002). To be entitled to gap-time credits, the following must be proven: (1) the defendant has been sentenced previously to a term of imprisonment; (2) the defendant is sentenced subsequently to another term of imprisonment for an offense; and (3) both offenses occurred prior to the imposition of the first sentence to a term of imprisonment. *Ibid* at 105, 796 *A.2d* 847, *citing State v. French*, 313 *N.J.Super.* 457, 461, 712 *A.2d* 1281 (Law Div.1997).

■ Ruiz has established these elements. The current offense for which he is being sentenced occurred in 1991, before two

previously served sentences of imprisonment for offenses occurring after 1991. He need not be currently serving a sentence of imprisonment for gap-time to apply so long as both offenses occurred prior to the first sentence. It is entirely possible for Ruiz to have completed serving the first sentence by the time of the second sentence. Gap-time still applies. *State v. Lawlor,* 222 *N.J.Super.* 241, 245, 536 *A.*2d 766(App.Div.1988); *State v. French, supra,* 313 *N.J.Super.* at 463 at fn. 7, 712 *A.*2d 1281.

Two views of the purpose of gap-time credits have been offered. The majority view is that the statute was designed to counteract prosecutorial delay in pursuing a conviction for an earlier offense after a defendant has been sentenced on another crime. *State v. Guaman, supra,* 271 *N.J.Super.* at 133, 638 *A.*2d 162; *Sheil v. N.J. State Parole Bd.,* 244 *N.J.Super.* 521, 526, 582 *A.*2d 1279 (App.Div.1990), *appeal dismissed,* 126 *N.J.* 308, 598 *A.*2d 872 (1991). Under this view, the presumed intention is "to deter a prosecutor from 'dragging his heels' in pursuing an indictment when he knows that an inmate is available for a final disposition of an offense." *State v. Hugley,* 198 *N.J.Super.* 152, 158, 486 *A.*2d 900 (App.Div.1985). The obviously unjust scenario that the statute was designed to prevent is that of a prisoner who loses his opportunity for a concurrent sentence simply because a prosecutor failed to proceed against him for an offense committed earlier. *Ibid.*

The minority view is that the gap-time statute, derived from the Model Penal Code, was designed to place a limit on the cumulation of sentences. *State v. Guaman, supra,* 271 *N.J.Super.* at 133, 638 *A.*2d 162. *Booker v. New Jersey State Parole Bd.,* 136 *N.J.* 257, 260, 642 *A.*2d 984 (1994), explains that "[t]he general purpose behind the [gap-time credit] provision is to avoid the manipulation of trial dates to the disadvantage of defendants and to put defendants in the same position that they would have been 'had the two offenses been tried at the same time'."(quoting, *Model Penal Code,* § 7.06 commentary at 278 (1962)).

*State v. Guaman supra,* 271 *N.J.Super.* at 133–34, 638 *A.*2d 162, after discussing the existence of these interpretations of the gap-time statute added:

> ... that a prosecutor may not be aware of the fact that an offense was committed prior to imposition of the first sentence, that other factors and institutions may be equally guilty of causing delay in the disposition of criminal cases and that the gap time statute applies to consecutive as well as concurrent sentences, thus militating against the idea that this section was designed to create true concurrency of sentences imposed at different times.

*Meyer v. New Jersey State Parole Bd.,* 345 *N.J.Super.* 424, 430, 785 *A.*2d 465 (App.Div.2001), *certif. den.* 171 *N.J.* 339, 793 *A.*2d 717 (2002), while noting that not all delay is caused by dilatory tactics of the prosecution, nonetheless applied gap-time although not against the period of parole ineligibility imposed under *N.J.S.A.* 2C:43–7.2, the No Early Release Act. Often, defense strategy or the availability of the court, defense counsel or witnesses, dictates the order of dispositions. *Richardson v. Nickolopoulos,* 110 *N.J.* 241, 251, 540 *A.*2d 1246 (1988).

■ Without regard to the quandary about its intent and purpose, gap-time credit has been awarded when the statutory prerequisites have been met, even absent evidence of prosecutorial delay. The only occasions where courts have not granted gap-time credit when the statutory prerequisites have been met involve out-of-state convictions and sentences. *State v. Hugley,* 198 *N.J.Super.* 152, 486 *A.*2d 900 (App.Div.1985), cited by the State in this case as an example of a refusal to award gap-time where the statutory criteria are met, is actually an example of the literal interpretation of the statute's inapplicability to out-of-state sentences. Likewise the Court, finding that out-of-state convictions and sentences were not covered, based that decision on the language of the statute and its failure to specifically cover out-of-state convictions. "We are satisfied that by including the term 'aggregate' in the gap-time provision, the Legislature intended that provision to relate solely to instate sentences." *State v. Carreker, supra,* 172 *N.J.* at 111, 796 *A.*2d 847. This is so because

New Jersey courts would have no authority to "aggregate" an out-of-state sentence.

When finding that the criteria of this statute have been met and no out-of-state sentence is involved, courts have used the mandatory word "must" in deciding whether to grant gap-time credit. "When the threshold test is met, the sentencing judge *must* aggregate and allow a proper credit against the aggregate term or terms remaining to be served." [emphasis added] *State v. Richardson*, 208 *N.J.Super.* 399, 414, 506 *A.*2d 43 (App.Div.1986), *certif. den.* 105 *N.J.* 552, 523 *A.*2d 188 (1986). *State v. Guaman*, *supra*, 271 *N.J.Super.* at 133, 638 *A.*2d 162, says, "[b]ecause the crime for which defendant was convicted in Bergen County occurred prior to the sentence[ ][of] imprisonment imposed on the Essex County indictment, the defendant *must* be 'credited with time served in imprisonment on the prior sentence.' *N.J.S.A.* 2C:44–5b(2)" [emphasis added]. "If those elements are established, then the defendant *must* be awarded credit for the time served on the prior sentence when 'the permissible aggregate length of the term or terms' is determined." [emphasis added]. *State v. Carreker*, *supra*, 172 *N.J.* at 105, 796 *A.*2d 847. *State v. Shabazz*, 263 *N.J.Super.* 246, 622 *A.*2d 914 (App.Div.), *certif. den.* 133 *N.J.* 444, 627 *A.*2d 1149 (1993), also supports the mandatory nature of gap-time credits. There the failure to award gap-time credit where the statutory criteria had been met rendered the sentence *illegal* which would not be so if gap-time was discretionary. *State v. Flores*, 228 *N.J.Super.* 586, 550 *A.*2d 752 (App.Div. 1988), *certif. den.* 115 *N.J.* 78, 556 *A.*2d 1220 (1989). The actual illegality of any incorrect decision by this court would mean that the State, too, has a right to appeal any adverse decision.

While courts mention delay when they award gap-time, and absence of delay when they deny gap-time to out-of-state sentences, in no case has the existence or absence of prosecutorial delay been the *ratio decidendi*. Judge Baime, in *Guaman*, said, "[p]erhaps it is time for us to admit defeat and tell the Legislature in plain terms that we do not know what that body intended when

it enacted the gap time statute." *State v. Guaman, supra,* 271 *N.J.Super.* at 135, 638 *A.*2d 162. The facts here show why the gap-time statute should be applied literally until the Legislature provides better guidance.

First, consider the issue of delay. There are always delays given the limited resources of law enforcement, prosecutors and courts. Keep in mind that Lopez' sister reported him missing the day after his murder. How much sooner might his murder have been discovered if law enforcement had been truly devoted to finding him? Note the differences between the efforts to find some missing persons, such as Chandra Levy, in Washington, D.C., and the apparent ignoring of Lopez' disappearance. Even after the police received a clue about Lopez' murder in early 1999, it took the State until April 30, 1999, to find the body and more time to positively identify Lopez. Completing the investigation, finding the culprits and charging them took longer. Finally more time was taken to present the matter to a grand jury, resubmit it to a grand jury six (6) months later and finally try the case in the year 2002. If more police resources had been devoted to pursuing the initial clues, perhaps Lopez' body would have been discovered earlier and charges could have been brought sooner. And if more efforts had been devoted back in 1991, Lopez' body and murder might have been discovered before Ruiz' sentence on September 29, 1992.

Second, consider the issue of judicial economy. If prosecutorial delay was the criterion for the award or denial of gap-time, courts would be bogged in lengthy hearings trying to discern whether or not charges could have been brought sooner. Could the Legislature have intended courts to hold hearings and make such factual findings before awarding gap-time credit? The statute provides for no such hearings and no one has ever suggested any. Furthermore, requiring the State to justify any alleged delay would add to the time burdens of the State.

Third, consider long-standing principles of statutory construction. This is a penal statute and should be strictly construed.

Its literal application benefitting defendants is appropriate unless the Legislature says that it did not mean what it said. Most recently, the Court in *State v. Carreker, supra,* 172 *N.J.* at 115, 796 *A.*2d 847, announced that "[c]riminal statutes, generally speaking, are to be strictly construed, but the rule of strict construction does not mean that the 'manifestations of the Legislature's intention should be disregarded.' " Because we cannot fathom the legislative intent, there is nothing to disregard, and the principle of "strict construction" should be applied. While the court is aware of the often quoted aphorisms, " . . . it is a commonplace that often the surest way to misconstrue a statute is to read it literally," *(N.J. State Bd. of Architects v. Armstrong,* 89 *N.J.Super.* 358, 360, 215 *A.*2d 51 (App.Div.1965)), and, "[o]ften, the surest path to misconstruction is a literal reading of a statute," *(Henry v. Shopper's World,* 200 *N.J.Super.* 14, 18, 490 *A.*2d 320 (App.Div. 1985)), those expressions have no meaning when the legislative intent or purpose has not been manifested.

Fourth, consider the benefits of a more easily applied and consistent rule, a common legislative goal. If the application of gap-time is definite and non-discretionary, counsel can take gap-time into account when negotiating a plea and a defendant would know exactly what he would be facing. The court can consider it when deciding the quantum of a sentence and whether or not it is consecutive or concurrent. *State v. Richardson, supra,* 208 *N.J.Super.* at 413, 506 *A.*2d 43 (in the context of gap-time, judges must be "fully aware of the true meaning of the sentences which they impose"); *Richardson v. Nickolopoulos, supra,* 110 *N.J.* at 250, 540 *A.*2d 1246 (court has the flexibility to adjust sentences, by making them concurrent or consecutive or by imposing or failing to impose a parole ineligibility term, to account for gap-time). Where there are repeated offenses, the State can consider gap-time in deciding whether to seek an extended term. It is true that a bright-line rule or distinction almost always results in unfairness at the margins. *Quill Corp. v. North Dakota,* 504 *U.S.* 298, 314, 112 *S.Ct.* 1904, 1914, 119 *L.Ed.*2d 91 (1992) (principle recognized in context of tax laws); *N.A.A.C.P. v. Niagara Falls,*

65 *F.*3d 1002, 1019 (2nd Cir.1995) (principle recognized in context of Voting Rights Act case); *Louisiana v. M/V TESTBANK,* 752 *F.*2d 1019 (5th Cir.1985) *cert. den.* 477 *U.S.* 903, 106 *S.Ct.* 3271, 91 *L.Ed.*2d 562 (1986) (principle recognized in context of maritime tort law); *In re Waters,* 276 *Bankr.* 879 (N.D. Ill.2002) (principle recognized in context of bankruptcy law); *BBI Enterprises, Inc. v. Chicago,* 874 *F.Supp.* 890, 893 (N.D.Ill.1995) (principle recognized in context of First Amendment attack on municipal ordinance limiting "adult" entertainment zones); Taibi, *Politics And Due Process: The Rhetoric of Social Security Disability Law,* 1990 *Duke L.J.* 913, 931 (principle recognized in the context of due process analysis). Here any potential unfairness at the margins is ameliorated by the ability of counsel to adjust the plea bargain and of the court to adjust other aspects of the sentence once it is known whether or not gap-time credits apply. Moreover any potential unfairness benefits the defendant while the State has the opportunity to adjust the charges, apply for an extended term, and calculate the plea offer in response to the known application of gap-time credits.

The same principle of literal interpretation requires the court to deny the application for gap-time credit for seventeen (17) days in 1993 before Ruiz absconded and for the period before his sentence on February 5, 1999, when Ruiz was held pending sentence, the three hundred twenty-seven (327) days for which he received jail time credit on February 5, 1999.

In *State v. French, supra,* the issue was whether gap-time applied to a previously served municipal court sentence. The court said:

> The last inquiry with reference to the subject issue is the definition of the phrase "sentences of imprisonment," as used in the statute. The question is whether "imprisonment" requires a sentence to a State prison, or whether it includes a sentence to a County jail. *N.J.S.A.* 2C:43–10, "Place of Imprisonment," (emphasis added) refers to both State prisons (i.e., "to the custody of the Commissioner of the Department of Corrections"), to "the penitentiary or workhouse" of a county, 43–10b, and to imprisonment in certain county institutions when for less than one year, 43–10c. No other statute indicates that the word "imprisonment" relates to a particular institution. It appears to be as broad as the word "incarceration."

Accordingly, there does not appear to be a particular meaning in this statute to the word "imprisonment." The consequence therefore, to this last inquiry, for purposes of the gap credit statute, is that incarceration in a State prison resulting from a sentence imposed in any court, or any imprisonment imposed in the Superior Court, satisfies the gap credit criterion of "imprisonment." [313 *N.J.Super.* at 467, 712 *A.*2d 1281.]

This court concurs; hence the award of gap-time credit for the time served in Essex County Jail as a sentenced prisoner from September 29, 1992, to December 28, 1992. *See also State v. Bridges,* 131 *N.J.* 402, 621 *A.*2d 1 (1993) (sentence to three hundred sixty-four (364) days to county jail as a condition of probation is a "term of imprisonment" under *N.J.S.A.* 2C:35-12). However, here the critical term is the phrase "sentences of imprisonment." This phrase requires not only that there has been an imprisonment (either state prison or county jail would suffice), but also that there has to be a sentence. Time served before sentence is not a sentence and is not time served as a sentenced prisoner. While a credit for jail time pursuant to *R.* 3:21-8 is awarded against a sentence, it is not a sentence itself. Consider the case where, for example, there is no custodial sentence imposed at all. There is no "sentence of imprisonment" for which to award gap-time credit. Consider the case where a defendant is acquitted or charges are dismissed and there is no conviction. Again there is no "sentence" at all, much less a "sentence of imprisonment." *State v. Grate,* 311 *N.J.Super.* 544, 710 *A.*2d 599 (Law Div.1997) *aff'd.* 311 *N.J.Super.* 456, 710 *A.*2d 554 (App.Div. 1998) (where defendant acquitted in one of two pending cases, gap-time is not available, "since there was no sentencing on the other case, one of the statutory requirements for gap time (*i.e.,* that there be two sentences of imprisonment) is absent and therefore the defendant cannot be given a credit for gap time.") *State v. Grate, supra,* 311 *N.J.Super.* at 549-50, 710 *A.*2d 599. *See State v. Edwards, supra,* 263 *N.J.Super.* at 263, 622 *A.*2d 919 (explaining the "sharp distinction" between jail credits and gap-time credits and holding that gap-time credits are not available for the period the defendant spent in jail awaiting disposition of the first set of charges). And where there has been a sentence of

imprisonment resulting in an award of gap-time credit, the calculation of that credit always begins from the date of commencement of that sentence. While a literal interpretation may seem to be unfair in some circumstances involving pre-trial confinement and may allow manipulation of sentence dates where a defendant is confined pre-trial, the awarding of any gap-time at all is a matter of legislative grace and upon conviction a defendant will get jail time credit in any event. Moreover, as the facts here illustrate, pre-trial confinement is often the result of the defendant's conduct. Here Ruiz absconded in 1994 and was not captured until 1998. When he was finally captured, the State had to resurrect what became a five (5) year old case. There is nothing in this record to indicate whose fault the delay was before or after Ruiz' capture, if anyone was at fault. Perhaps Ruiz requested repeated adjournments. No hearing is provided for by the gap-time statute and none has never been suggested as appropriate in any case. Any such hearing would be difficult, time-consuming, and imprecise as few will recall the reason for any delay in the prosecution of that case. Again, a literal interpretation is warranted. Because Ruiz was not then serving a "sentence of imprisonment" he is not entitled to gap-time here for the three hundred twenty-seven (327) days of jail time credit he earned in 1993, 1998 and 1999.

Counts One, Conspiracy, and Count Seven, Possession of a Weapon for an Unlawful Purpose, are dismissed by merger. Based upon the analysis of mitigating and aggravating factors placed on the record, considering the plea bargain, and for the reasons set forth by the court orally, on Count Two, Aggravated Manslaughter, Ruiz is committed to the custody of the Commissioner of the Department of Corrections for a term of ten (10) years, during which time he shall not be eligible for parole for a period of three and one-thirds (3 ⅓) years pursuant to the Graves Act. He is entitled to eight hundred ninety (890) days of jail credit as shown on the Presentence Investigation Report and four hundred sixty-one (461) days of gap-time credit in accordance with this opinion.