226 N.J. Super. 356 (1988)
544 A.2d 417
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JANNELL GARLAND, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 24, 1988.
Decided July 12, 1988.
*358 Before Judges MICHELS and A.M. STEIN.
Daniel V. Gautieri, Assistant Deputy Public Defender, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; Daniel V. Gautieri, of counsel and on the brief).
Robert G. Brehme, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; Robert G. Brehme, of counsel and on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Jannell Garland challenges the sentences imposed as a result of her convictions for bail jumping and violation of probation entered on guilty pleas.
A brief synopsis of the procedural history giving rise to this appeal is helpful to an understanding of the decision we reach today. On November 22, 1985, following plea negotiations, defendant pleaded guilty to two charges of possession of controlled *359 dangerous substances, to wit, heroin, with intent to distribute in violation of N.J.S.A. 24:21-19a(1). The State, for its part of the plea agreement, agreed to dismiss other criminal charges set forth in Indictment No. 85-08-1240-B. On December 22, 1985, while awaiting sentencing on the aforementioned drug charges, defendant was arrested and charged with armed robbery. Defendant was then incarcerated from December 23, 1985, until January 5, 1986. On January 6, 1986, defendant was sentenced on the drug charges contained in Indictment No. 85-08-1240-B to an 18-month probationary term, with 210 days to be served in the county jail as a condition of probation. Defendant was incarcerated on the drug charges from January 6, 1986, until April 11, 1986. However, defendant remained incarcerated on the pending armed robbery charges from April 11, 1986, until June 25, 1986, when she was released on bail.
On October 14, 1986, defendant failed to appear in court for a pre-trial hearing and a bench warrant was issued for her arrest. On November 23, 1986, defendant was incarcerated on the pending robbery charges. (Indictment No. 86-01-0044-B).
Pursuant to a plea agreement entered into on January 6, 1987, the State agreed to dismiss the charges listed in the robbery indictment (No. 86-01-0044-B) if defendant would plead guilty to bail jumping, the charge cited in an accusation (No. 87-01-0014-B) which was filed the same day. At the plea hearing, defendant admitted that she had failed to appear in court on October 14, 1986. Defendant then pleaded guilty to bail jumping, a third degree offense, and pursuant to the plea agreement, Indictment No. 86-01-0044-B was dismissed. The State also agreed at the time of the plea that defendant would have the right to argue that she was entitled to jail credit on the bail jumping sentence for time served in custody on the robbery indictment.
On February 6, 1987, defendant was sentenced on the bail jumping charge to a five-year term of imprisonment, with a one-year period of parole ineligibility. Defendant was also sentenced to a consecutive five-year term of imprisonment for *360 the violation of probation. Further, on other unrelated drug charges to which defendant had previously been sentenced, (Indictment No. 85-08-1312-B), the trial court vacated probation and sentenced defendant to a concurrent five-year term of imprisonment. In addition, the trial court found initially that defendant was entitled to 166 days of jail credit for time spent in custody from December 23, 1985, to January 5, 1986, and April 11, 1986, to June 25, 1986, and from November 23, 1986, to February 6, 1987. However, the trial court subsequently determined that it had erroneously awarded jail credit in the amount of 166 days. Since the bail jumping charge came into existence on January 6, 1987, the trial court concluded that defendant would receive jail credit only from January 6, 1987, until February 6, 1987, a total of 32 days. Defendant appealed.
Defendant contends that her sentences should be reduced and additional jail credits awarded or, alternatively, her sentences vacated and the matter remanded to the trial court for further proceedings consistent with the principles set forth in State v. Kovack, 91 N.J. 476, 483-484 (1982).

I.
Defendant first contends that the trial court erred in its computation of jail credits. Specifically, defendant argues that she should be awarded 166 days of jail credit consistent with the pre-sentence report, which indicates that defendant was incarcerated from December 23, 1985, to January 5, 1986, from April 11, 1986, to June 25, 1986, and from November 23, 1986, to February 6, 1987. The pre-sentence report further indicates, with respect to time served by defendant, that:
Excluded from the period of incarceration is the period 1-6-86 to 4-11-86 when she was serving a sentence imposed on 1-6-86 in reference to the prior indictments 85-08-1240-B and 85-08-1312-B. Also, excluded is the period 11-13-86 to 11-22-86, as she was serving an unrelated sentence imposed on 11-14-86 by the Egg Harbor Township Municipal Court. During the period 6-26-86 to 11-12-86, she was on the street.
Defendant's position is that although jail credit in the instant case was not mandated by R. 3:21-8, the equities of the *361 present situation call for the 166-day credit initially awarded. She argues that had the State permitted defendant to plead guilty to a third degree offense in the robbery indictment, defendant would be clearly entitled to the full 166 days of credit under R. 3:21-8. Alternatively, defendant contends that she should be awarded jail credit as a result of being confined from November 23, 1986, to February 6, 1987 (76 days), because this period of confinement was entirely the result of her "jumping bail." Defendant also contends that since the State could have drafted the bail jumping accusation at any time subsequent to her failure to appear on October 14, 1986, the State should not be able to prolong her confinement as a result of its own delay in not filing the accusation until January 6, 1987.
R. 3:21-8 provides that "[t]he defendant shall receive credit on the term of a custodial sentence for any time he has served in custody in jail or in a state hospital between his arrest and the imposition of sentence." "However, the rule has never been interpreted to apply to confinement not directly attributable to the particular offenses giving rise to the initial incarceration." State v. Allen, 155 N.J. Super. 582, 584 (App.Div. 1978), certif. den. 77 N.J. 472 (1978); State v. Council, 137 N.J. Super. 306 (App.Div. 1975); State v. Beatty, 128 N.J. Super. 488 (App. Div. 1974); State v. Marnin, 108 N.J. Super. 442, 445 (App.Div. 1970), certif. den. 55 N.J. 598 (1970), cert. den. 400 U.S. 835, 91 S.Ct. 70, 27 L.Ed.2d 67 (1970). R. 3:21-8 must be distinguished from N.J.S.A. 2C:44-5b(2), "gap-time credit", which relates to time spent in imprisonment as a result of a sentence previously imposed and has no application unless defendant, while incarcerated, is sentenced for an offense occurring before the prior sentence. See State v. Jones, 184 N.J. Super. 626, 629 n. 2 (Law Div. 1982); See also Richardson v. Nickolopoulos, 110 N.J. 241 (1988).
Defendant is only entitled to credit for time served directly attributable to the bail jumping charge. Therefore, since the bail jumping offense did not occur until October 14, 1986, no credit should be awarded for time served prior to that date *362 because incarceration was attributable to unrelated charges. As we noted in State v. Hill, 208 N.J. Super. 492, 495 (App.Div. 1986), certif. den. 104 N.J. 412 (1986), "[i]t is not uncommon for a defendant to be incarcerated on charges for which he is later acquitted or which are subsequently dismissed." Although this is unfortunate, credit will not be given for wholly unrelated charges.
A bench warrant was issued on October 14, 1986, and defendant was thereafter incarcerated as a result thereof on November 23, 1986. Incarceration from that date  November 23, 1986  until the date of sentencing on the bail jumping accusation, February 6, 1987, was directly attributable to defendant's bail jumping offense. Therefore, defendant should not be precluded from receiving jail credit during this time merely because the robbery indictment was still pending and the bail jumping accusation was not filed until January 6, 1987, the date of the plea agreement. The rule specifically provides that credit is given for time served in jail between a defendant's arrest and the imposition of sentence; the award of jail credits is not dependent upon the date the State files a formal accusation or indictment.
Consequently, the matter is remanded to the trial court to award defendant appropriate jail credit for the period between November 23, 1986, and February 6, 1987.

II.
Defendant next contends that since the trial court failed to inform her at the time of the plea hearing on the bail jumping charge of the possibility of a consecutive sentence being imposed for a violation of probation, the sentence imposed upon her for the probation violation must be vacated and the matter remanded for further proceedings consistent with the principles set forth in State v. Kovack, 91 N.J. 476, 483-484 (1982).
Following defendant's admission at the plea hearing on the bail jumping charge that she willfully failed to appear in court *363 on October 14, 1986, for a pre-trial hearing on the robbery indictment, the trial court informed defendant that by pleading guilty to bail jumping she was subject to a maximum penalty of five years incarceration and a fine of $750. Thereafter, the trial court asked defendant: "Were you on probation or parole for any other offense as of the time this offense was being committed?" When defendant responded, "no," defense counsel attempted to clarify the confusion on this matter as follows:
On the plea agreement, I included in that answer the word "yes". I believe the question I asked Ms. Garland when we filled out the forms was, was she on probation at present, and I think she said yes, she was on probation after the offense was committed, not during.
However, at the time the bail jumping offense was committed defendant was clearly on probation as a result of the sentence imposed on January 6, 1986.
Defendant now contends essentially that since the trial court failed to inform her that by pleading guilty to bail jumping she could be charged with a violation of probation, and that a consecutive sentence could be imposed for that violation of probation, the trial court therefore failed in its obligation to inform defendant of the penal consequences of her plea. We disagree.
Several factors are pertinent in the determination of whether a defendant should be permitted to withdraw a plea of guilty, one of which is materiality of the mistake or omission and resulting prejudice to defendant. See State v. Taylor, 80 N.J. 353, 363-364 (1979). "To be material a mistake must relate to the penal consequences of a plea. A mistake as to a collateral consequence, while it may have a significant effect upon a defendant, is not material." State v. Riggins, 191 N.J. Super. 352, 355 (Law Div. 1983). See State v. Heitzman, 209 N.J. Super. 617, 622 (App.Div. 1986), aff'd o.b. 107 N.J. 603, 604 (1987). Where the penal consequences of the plea are "manifestly beyond defendant's contemplation", a remand for resentencing or renegotiation of the plea agreement, or a withdrawal of the guilty plea may be necessary. State v. Kovack, supra, 91 N.J. at 483.
*364 To vacate a plea, defendant must show not only that he or she was misinformed of the terms of the agreement or that the sentence violated his or her reasonable expectations, but also that he or she is prejudiced by enforcement of the agreement. Taylor, supra, 80 N.J. at 363. Hence, the plea will not be vacated if knowledge of the consequences would not have made any difference in defendant's decision to plead. Consistent with the strong interests of the State in the finality of a guilty plea, the standard for withdrawal of a plea is more stringent after sentencing. At sentencing, the plea may be withdrawn in "the interests of justice," but after sentencing, only "to correct a manifest injustice." See R. 3:21-1.
Here, defendant pleaded guilty to bail jumping and the State dismissed the robbery indictment. The trial court properly advised defendant that by pleading guilty she was subject to a maximum term of imprisonment of five years. The trial court also questioned defendant as to the plea agreement and the possibility of a parole ineligibility term. Defendant acknowledged that she understood the plea agreement and the recommendation of a five-year prison term with a one-year period of parole ineligibility. Although the trial court inquired as to whether defendant was on probation at the time of the bail jumping offense, the violation of probation charge was not part of the plea agreement and there was no discussion whatsoever as to the sentence that could or would be imposed for the violation of probation. In fact, the violation of probation charge was not filed until the date of sentencing, approximately one month after the plea hearing. The focus of the plea agreement was the disposition of the bail jumping accusation and the robbery indictment, and only peripherally implicated a possible future probation violation charge. Defendant fully understood the nature of the charge to which she was pleading guilty and the penal consequences thereof.
Under the circumstances, the trial court did not have a duty to inform defendant prior to accepting the plea that by pleading *365 guilty to bail jumping any sentence that may be imposed for charges although not directly related to that charge but possibly flowing from it, could be required to be served consecutively to the sentence imposed for the bail jumping. We do not read State v. Kovack, supra and State v. Howard, 110 N.J. 113 (1988) to require that a trial court inform a defendant, as a prerequisite to accepting such a plea, that the court may impose a consecutive sentence for a conviction on a violation of probation charge, if such a charge is filed in the future as a result of a defendant's pleading guilty to the charge involved in the plea agreement. Cf. State v. Cullars, 224 N.J. Super. 32 (App.Div. 1988).
Our Supreme Court noted in State v. Taylor, supra, that to vacate a plea, a defendant must show not only that he was misinformed of the terms of the plea agreement or that the sentence violated his or her reasonable expectations, but also that he or she would be prejudiced by enforcement of the agreement. Here, defendant was not misinformed as to the terms of the plea agreement. The sentence imposed for the subsequent probation violation did not violate the plea agreement with respect to the bail jumping charge or defendant's reasonable expectations concerning it. The fact that a probation violation charge might in the future be filed as a result of defendant's guilty plea to bail jumping and that a court may impose a prison term which is to be served consecutively to the bail jumping sentence does not constitute such a direct penal consequence of the bail jumping plea and certainly does not warrant setting aside defendant's guilty plea to bail jumping.
Moreover, to the extent that defendant's plea to bail jumping may give rise to a charge for violation of probation, defendant could not reasonably expect that the probationary term she received on the prior drug offenses represented her maximum penal exposure for those offenses. Defendant knew or should have known that by violating probation the court could re-sentence her to any sentence which could have been imposed *366 originally. N.J.S.A. 2C:45-3(b); State v. Franklin, 198 N.J. Super. 407, 409 (App.Div. 1985). See also State v. Ryan, 86 N.J. 1, 7 n. 4 (1981), cert. den. 454 U.S. 880, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981). There can be no reasonable expectation that a sentence for violation of probation will be imposed concurrently with any then pending additional offenses. Therefore, under these circumstances, the trial court's failure to inform defendant that a consecutive sentence could be imposed for violation of probation, if such a charge is subsequently filed, does not result in a manifest injustice.

III.
We are also satisfied that contrary to defendant's claim, the sentences imposed by the trial court did not violate the Code of Criminal Justice. Plaintiff's arguments with respect to this issue are clearly without merit. R. 2:11-3(e)(2). We simply add that considering all of the pertinent factors, particularly defendant's extensive criminal record, her history of involvement with drugs and her failure to abide by conditions of probation, trial court did not mistakenly exercise its discretion in imposing a one-year period of parole ineligibility. Additionally, the violation of probation and the offense of bail jumping are separate, independent offenses, and therefore, consecutive terms did not transgress the principles discussed in State v. Yarbough, 100 N.J. 627 (1985), cert. den. 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986). In sum, the sentences were neither manifestly excessive nor unduly punitive. They do not represent a miscarriage of justice or shock the judicial conscience. State v. Roth, 95 N.J. 334, 364-365 (1984).

IV.
However, we are satisfied that the trial court erred in dismissing defendant's pro se motion for reconsideration of the sentence, which was scheduled on May 22, 1987, without conducting a hearing on the motion. Although defendant's trial counsel requested that defendant be present at the motion, *367 defendant was not brought from jail to the court to prosecute the motion. The prosecutor indicated a willingness to postpone the motion for a week but the trial court dismissed the motion on the ground that defendant failed to inform her trial counsel of the substantive basis of said motion. Defendant clearly should have been allowed to appear and prosecute her motion for reconsideration of the sentence. Defendant's right to argue a pro se motion did not depend upon whether she advised her trial counsel of the substantive basis of that motion. Consequently, the trial court should have postponed the motion, particularly in light of the prosecutor's willingness to accept such a course of action. Consequently, the order denying the motion for reconsideration of the sentences is reversed and the matter remanded to the trial court for a hearing on a motion for reconsideration of the sentence.

V.
Except to remand the matter to the trial court for a hearing on defendant's motion for reconsideration of the sentence and to award appropriate jail credits consistent with our opinion, the judgments of conviction and the orders of commitment under review are affirmed.