20 A.3d 1137

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. L.H., DEFENDANT–RESPONDENT.

Argued March 14, 2011—Decided June 15, 2011.

*Lucille M. Rosano,* Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (*Carolyn A. Murray,* Acting Essex County Prosecutor, attorney).

*Alexander R. Shalom,* Designated Counsel, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney).

*Carol M. Henderson,* Assistant Attorney General, submitted a brief on behalf of amicus curiae Attorney General of New Jersey (*Paula T. Dow,* Attorney General, attorney).

PER CURIAM.

The judgment of the Appellate Division is reversed, and the case is remanded to the Law Division (1) for the entry of an order (a) vacating the entire award of 2,145 days of gap-time credits originally granted on September 18, 2009 and (b) remanding defendant L.H. to serve the sentence imposed on that date without any credit for gap time; and (2) for the entry of a corrected judgment of conviction reflecting no days of gap-time credit.

JUSTICE LONG, concurring.

I am in agreement with the ultimate conclusion that defendant is not entitled to gap-time credits. I write separately to express my view that there is no overlap requirement in the gap-time statute, *N.J.S.A.* 2C:44–5(b)(2), and to set forth a separate rationale for denying gap-time credits—the impossibility of prosecutorial manipulation.

## I.

The gap-time statute provides that "when a person is sentenced at different times for two offenses, both committed prior to the sentencing on the first, he is to be given credit against the aggregate of both sentences for any time served on the first." Cannel, *New Jersey Criminal Code Annotated,* comment 4 on *N.J.S.A.* 2C:44–5 at 1130 (2010). Specifically, the statute provides:

> b. Sentences of imprisonment imposed at different times. When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence, other than an offense committed while in custody:

> (1) The multiple sentences imposed shall so far as possible conform to subsection a. of this section; and

> (2) Whether the court determines that the terms shall run concurrently or consecutively, the defendant shall be credited with time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be served; and

> (3) When a new sentence is imposed on a prisoner who is on parole, the balance of the parole term on the former sentence shall not be deemed to run during the period of the new imprisonment unless the court determines otherwise at the time of sentencing.

> [*N.J.S.A.* 2C:44–5(b).]

This appeal addresses the application of subsection (b)(2), which

> requires that a defendant who has been sentenced to imprisonment and is subsequently sentenced to another term for an offense committed prior to the imposition of the former sentence (other than an offense committed while in custody) be "credited" at the time of the second sentence for so much of the term of imprisonment as the defendant has served on the prior sentence.

> [*Booker v. N.J. State Parole Bd.,* 136 *N.J.* 257, 259, 642 *A.*2d 984 (1994).]

In *State v. Franklin,* 175 *N.J.* 456, 815 *A.*2d 964 (2003), we recently reaffirmed, in clear language, the gap-time statute's overall purposes: "to avoid manipulation of trial dates to the disadvantage of defendants and to put defendants in the same position that they would have been had the two offenses been tried at the same time." *Id.* at 462, 815 *A.*2d 964 (quoting *Booker, supra,* 136 *N.J.* at 260, 642 *A.*2d 984) (internal quotation marks omitted). In *Franklin,* we went on to set forth the applicable standard:

> The three-prong test for entitlement to gap-time credit requires a showing that (1) the defendant has been sentenced previously to a term of imprisonment, (2) the defendant is sentenced subsequently to another term, and (3) both offenses occurred prior to the imposition of the first sentence.
>
> [*Ibid.*]

In doing so, we stated unequivocally that:

> If those elements are established, then the defendant *must* be awarded credit for the time served on the prior sentence when the permissible aggregate length of the term or terms is determined.
>
> [*Ibid.* (emphasis added) (quoting *State v. Carreker*, 172 *N.J.* 100, 105, 796 *A.*2d 847 (2002)) (internal quotation marks omitted).]

Under that rather clear paradigm, defendant, who was sentenced to imprisonment and thereafter sentenced to another term for an offense committed prior to the first sentence, is eligible for gap-time credits.

## II.

When interpreting a statute, this Court must accord it its plain meaning. *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). Overlaying a requirement that defendant be serving the original sentence when the later sentence is imposed fails to give voice to the clear language of *N.J.S.A.* 2C:44–5(b) and neglects to afford this penal statute the strict construction it deserves. *See State v. Hodde*, 181 *N.J.* 375, 379, 858 *A.*2d 1126 (2004) (noting that criminal statutes "are to be strictly construed"). Indeed, the plain language of *N.J.S.A.* 2C:44–5(b) gives no indication that it requires such an overlap.

That reading of the statute is consistent with our prior judicial practice, which has awarded credit for sentences that have long since concluded. *See, e.g., State v. Lawlor*, 222 *N.J.Super.* 241, 245, 536 *A.*2d 766 (App.Div.1988) ("[S]ervice of previously imposed terms and currently imposed terms *need not overlap* to entitle a defendant to this credit." (Emphasis added)); *see also State v. Ruiz*, 355 *N.J.Super.* 237, 242, 809 *A.*2d 890 (Law Div.2002) ("[Defendant] *need not be currently serving* a sentence of imprisonment for gap-time to apply so long as both offenses occurred prior to the first sentence." (Emphasis added)); *State v. French*,

313 *N.J.Super.* 457, 463 n. 7, 712 *A.*2d 1281 (Law Div.1997) ("[G]ap time must be awarded even if the defendant has completed the earlier sentence....").

Indeed, the only support for a different interpretation is dictum in *State v. Garland,* 226 *N.J.Super.* 356, 361, 544 *A.*2d 417 (App.Div.), *certif. denied,* 114 *N.J.* 288, 554 *A.*2d 845 (1988), an entirely inapposite jail-credit case, *id.* at 360, 544 *A.*2d 417; *see R.* 3:21–8 ("The defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence.").

I subscribe to the views expressed in *Lawlor, Ruiz,* and *French,* and find no support in *N.J.S.A.* 2C:44–5 for the requirement of sentence overlap. Indeed, to the extent that the gap-time statute is informed by the notion of providing defendant with the "lost opportunity" for concurrency that a simultaneous sentencing process would have provided, the requirement of overlap makes no sense whatsoever. Moreover, even if the Code commentary, *see, e.g., infra* at 547, 20 *A.*3d at 1149 (*quoting* 2 *Final Report of the New Jersey Criminal Law Revision Commission,* commentary to § 2C:44–5, at 336 (1971) ("Subsection (b) is addressed to the problem of a sentence of imprisonment imposed upon a person who is already serving a term under a sentence imposed for an earlier offense.")), could be considered to support another interpretation, our rules of statutory construction require the application of lenity, a corollary to the doctrine of strict construction, which dictates that criminal statutes must be interpreted in favor of a defendant, *State v. Gelman,* 195 *N.J.* 475, 482, 950 *A.*2d 879 (2008). That said, defendant should not be barred from gap-time credit because his earlier sentence has been completed.

### III.

However, as we have said, there is an equally important principle underlying gap time and that is to "deter a prosecutor from 'dragging his heels' in pursuing an indictment when he knows that an inmate is available for a final disposition of an offense."

*Carreker, supra,* 172 *N.J.* at 106–07, 796 *A.2d* 847 (quoting *State v. Hugley,* 198 *N.J.Super.* 152, 158, 486 *A.2d* 900 (App.Div.1985)) (internal quotation marks omitted). As a matter of practice, courts do not engage in fact-finding proceedings in every case to determine whether or not prosecutorial manipulation has occurred. *Ruiz, supra,* 355 *N.J.Super.* at 245, 809 *A.2d* 890. Rather, defendant is afforded gap-time credit if he satisfies the three prongs of the statute. *Franklin, supra,* 175 *N.J.* at 462, 815 *A.2d* 964. The only exceptions have been cases in which the possibility of manipulation was infinitesimal to non-existent.

Guided by that principle, our courts have occasionally refrained from awarding gap-time credit in situations where there was little or no risk of manipulation by the prosecutor. *See Carreker, supra,* 172 *N.J.* at 113–14, 796 *A.2d* 847 (justifying denial of gap-time credit where defendant was serving out-of-state sentence because risk of manipulation was non-existent); *Hugley, supra,* 198 *N.J.Super.* at 159, 486 *A.2d* 900 (gap-time credit not awarded where prosecutor not capable of detecting defendant residing out of state's boundaries and jurisdiction).

That is the case here. Here, the victim of the 1994 sexual assault could not identify the perpetrator. Although a rape kit provided a DNA sample,

[t]he record is clear that, when the 1994 sexual assault occurred, there was no DNA sample from defendant against which a comparison could have been made; a sample of defendant's DNA was not provided until defendant's conviction on the 1998 sexual assault. Even then, the task of comparing DNA in dormant or "cold" cases against an avalanche of DNA samples then being collected under the DNA Act was daunting. In 2002, the Attorney General started a comprehensive comparison program that, by 2004, yielded a match between defendant's DNA sample and the DNA retrieved and secured from the 1994 sexual assault. By that point, ten years had elapsed since defendant had committed the 1994 sexual assault, and the State was required to identify the whereabouts of both defendant and his victim. Once defendant and his victim were located, the State promptly sought to confirm its findings via a new DNA sample from defendant and by comparing that new sample against the DNA from the 1994 sexual assault. When that comparison confirmed the match, defendant was arrested.

[*Infra* at 550, 20 *A.*3d at 1151.]

In these unique circumstances, manipulation by the prosecutor was a veritable impossibility. Here, the State was prevented from pursuing conviction by factors beyond its control. It was only the development of reliable forensic testing techniques and a DNA database that did not exist at the time of the 1994 sexual assault that changed the calculus. Therefore, one of the fundamental aims of the gap-time statute, deterrence of prosecutorial "heel-dragging," is simply not implicated. Awarding gap-time credit would thus undermine a fundamental purpose of the statute. Accordingly, no gap time is warranted in this case.

Justice RIVERA–SOTO, concurring.

Once again, we are called on to delve into the question of when and under what circumstances a defendant being sentenced is entitled to gap-time credit. The notion of gap-time credit stems from *N.J.S.A.* 2C:44–5(b)(2), "which governs sentencing at different times for multiple offenses[,]" *Richardson v. Nickolopoulos*, 110 *N.J.* 241, 242, 540 *A.2d* 1246 (1988). That statute

> requires that when a defendant who has been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the imposition of the former sentence (other than an offense committed while in custody), the defendant shall be "credited" at the time of the second sentence for so much of the term of imprisonment as has been served on the prior sentence. [*Ibid.*]

Gap-time credit "is not to be confused with the usual credit for [time served prior to the imposition of sentence], referred to as 'jail credits,' which is required to be applied in reduction of sentences under *Rule* 3:21–8." *Ibid.* Unlike jail credits, the concept embodied in *N.J.S.A.* 2C:44–5(b) has been christened "gap-time credit" because "it applies to the gap between the sentences." *Ibid.*

In this appeal, defendant L.H.[1] committed a sexual assault in

---

[1] Because the allegations involve a sexual assault and in order to shield the identity of his victims, defendant is identified solely by his initials, and his

1994, but his DNA[2] was not matched to that crime until 2004, those results were not confirmed until 2008, he was not arrested for that crime until later that year, and he did not plead guilty to that crime until 2009. In the interim, defendant had been thrice convicted and twice incarcerated. In 2009, he pled guilty to the 1994 sexual assault in exchange for a sentence of seven years' incarceration. At that point, defendant claimed that, because the 1994 sexual assault occurred before his intervening convictions and sentences, he was entitled to gap-time credit for the time he spent incarcerated on those later-in-time-but-earlier-sentenced charges. The trial court and the Appellate Division agreed, causing the seemingly incongruous result that the aggregate of defendant's jail- and gap-time credits sufficed to satisfy in full the term of imprisonment he received for the 1994 sexual assault. For all intents and purposes, then, defendant walked away scot-free from a decade-and-a-half-delayed seven-year sentence on the 1994 sexual assault.

No rational system of criminal liability can countenance that result, one reached solely by an erroneous reading and application of the gap-time statute. Consistent with the express provisions of *N.J.S.A.* 2C:44–5(b)(2) and the overall goals of the *Code of Criminal Justice*, and absent improper manipulation by the State, gap-time credit is available only when two factors coalesce: the defendant is then currently serving a sentence, and the sentencing court is determining whether the new sentence for an offense that occurred before the imposition of the defendant's current sentence

---

victims are referred to either by initials or pseudonyms. *See generally State v. G.C.*, 188 *N.J.* 118, 121 n. 1, 902 *A.2d* 1174 (2006).

2 *See State v. Kemp*, ·195 *N.J.* 136, 143 n. 9, 948 *A.2d* 636 (2008) ("[D]eoxyribonucleic acid (DNA) is a molecule of genetic materials shaped like a double-helix or spiral ladder. In every person, each cell with a nucleus contains a copy of that person's DNA. Thus, DNA serves as a blueprint for the human body. Further, no two individuals, except identical twins, have the same nucleotide sequences throughout their DNA. Thus, DNA testing conducted on cells from various parts of the same body will yield the same results." (citation, internal quotation marks and editing marks omitted)).

is to be concurrent or consecutive to that current sentence. Because neither element was present here, defendant is not entitled to any gap-time credit in respect of the seven-year sentence of imprisonment imposed in 2009 for the 1994 sexual assault to which he pled guilty arising from his earlier incarcerations.

## I.

At some point after midnight on October 25, 1994, in a first-floor apartment in Newark, sixteen-year-old Cathy[3] was sleeping. Defendant entered her room and awakened her; holding her at knifepoint and covering her face with the bed sheets to avoid being identified, defendant raped Cathy three separate times (the 1994 sexual assault). Before leaving, defendant bound Cathy's hands and feet. She eventually broke free and called the police, who took her to a hospital. Hospital personnel retrieved DNA from the forcible sexual assault, which was preserved in a rape evidence kit. However, because Cathy could not identify her assailant, the DNA evidence could not then be compared to any known DNA samples, and the case lay dormant.

In 1995, defendant was convicted and sentenced to prison for third-degree endangering the welfare of a minor, in violation of *N.J.S.A.* 2C:24–4; defendant completed his sentence and was released from custody on April 27, 1998 (the 1995 endangering).[4] Four months after his release, defendant again was arrested, this time for, among other charges, aggravated criminal sexual contact in violation of *N.J.S.A.* 2C:14–3(a) (the 1998 sexual assault).[5] In

---

[3] *See supra*, n. 1.

[4] Although the record does not disclose the details of defendant's 1995 endangering conviction, the definition of the crime of endangering the welfare of a minor in the third degree is instructive; it applies to "[a]ny person ... who engages in sexual conduct which would impair or debauch the morals of [a] child ... under the age of 16...." *N.J.S.A.* 2C:24–4(a).

[5] As described in defendant's Adult Presentence Report prepared for the sentencing in this case, "[a]ccording to [the p]olice report dated 08/30/98, the

connection with his 1998 sexual assault conviction, defendant was required to provide a sample of his DNA. *See* DNA Database and Databank Act of 1994 (DNA Act), *N.J.S.A.* 53:1–20.17 to –20.37; *State v. O'Hagen,* 189 *N.J.* 140, 147–48, 914 *A.*2d 267 (2007) (upholding constitutionality of DNA Act and explaining that, although "[i]nitially only persons convicted of certain sex offenses were required to provide a blood sample for DNA profiling[,]" DNA Act had been amended "to require DNA samples of all adult and juvenile offenders convicted of a crime or found not guilty by reason of insanity of any crime"). Finally, in early 2001, defendant was charged with several drug offenses and, on February 2, 2001, defendant entered a guilty plea to the distribution or possession with intent to distribute a controlled dangerous substance within one thousand feet of school property, in violation of *N.J.S.A.* 2C:35–7(a) (the 2001 drug offense). On March 13, 2001, defendant was sentenced to prison on both the 1998 sexual assault and the 2001 drug offense. Defendant completed his period of incarceration on January 22, 2004; however, defendant immediately was civilly committed under the New Jersey Sexually Violent Predator Act (SVPA), *N.J.S.A.* 30:4–27.24 to –27.38.[6]

---

victim, KM age 7 stated that she was at the home of her aunt, ... at approximately 3–4 am when she was awaken[ed] by a man, the defendant ... that was on top of her. The defendant fondled KM's chest and buttocks and stated to her ... not to tell [her aunt] and gave [her] a dollar.... The victim later informed her aunt and confirm[ed] that no penetration occurred during the assault." At sentencing in this case, defendant conceded the accuracy of the Adult Presentence Report.

[6] The SVPA "provides for the involuntary commitment of any person who requires 'continued involuntary commitment as a sexually violent predator.' " *In re Commitment of J.M.B.,* 197 *N.J.* 563, 570, 964 *A.*2d 752 (quoting *N.J.S.A.* 30:4–27.32(a)), *cert. denied,* —— *U.S.* ——, 130 *S.Ct.* 509, 175 *L.Ed.*2d 361 (2009). It is designed "to protect other members of society from the danger posed by sexually violent predators." *Id.* at 571, 964 *A.*2d 752 (citation omitted). It is "intended to modify the involuntary civil commitment process in recognition of the need for commitment of those sexually violent predators who pose a danger to others should they be returned to society." *Ibid.* (citation and internal quotation marks omitted). The record does not disclose whether defendant remains committed under the SVPA.

In 2002—eight years after the 1994 sexual assault and utilizing the data collected pursuant to the DNA Act—the Attorney General "began a program to examine old sex crimes evidence kits utilizing new DNA technology." As a result of this vast and time-consuming comparative process, "on July 16, 2004, the State Police Laboratory notified the Newark Police Department that a database sample of the defendant's DNA, taken from defendant at the time of his [1998 sexual assault] conviction[ ], matched DNA evidence from [the 1994 sexual assault] evidence kit." Given the passage of nearly a decade since the 1994 sexual assault, the police needed "to locate the victim and the defendant[.]"

In early 2008, the Essex County Prosecutor's Office assumed the reins of the investigation, located Cathy [7] and "learned that the defendant was being housed as a sexually violent predator[.]" On April 16, 2008, after a second DNA comparison using a new sample of defendant's DNA confirmed his identity as Cathy's attacker, he was arrested for the 1994 sexual assault. On October 29, 2008, the Essex County grand jury returned an indictment charging defendant with two counts of first-degree aggravated sexual assault, one in violation of *N.J.S.A.* 2C:14–2(a)(3) (where rape "is committed during the commission, or attempted commission, whether alone or with one or more other persons, of robbery, kidnapping, homicide, aggravated assault on another, burglary, arson or criminal escape"), and the other in violation of *N.J.S.A.* 2C:14–2(a)(4) (where rapist "is armed with a weapon or any object fashioned in such a manner as to lead the victim to reasonably believe it to be a weapon and threatens by word or gesture to use the weapon or object").[8]

---

[7] By this point, the victim, Cathy, was incarcerated for an unrelated crime.

[8] The indictment perforce was limited to those two charges because, by that point, any additional charges were barred by the statute of limitations. *See N.J.S.A.* 2C:1–6 (providing that prosecution for first-degree aggravated assault "may be commenced at any time[,]" and that, "[e]xcept as otherwise provided in this section, prosecutions for other ... crime[s] must be commenced within five years after it is committed").

Pursuant to a plea agreement, on January 27, 2009, defendant pled guilty to one count of the lesser offense of second-degree sexual assault, in violation of *N.J.S.A.* 2C:14–2(c)(1) (providing that person "is guilty of sexual assault if he commits an act of sexual penetration with another person [while] us[ing] physical force or coercion, but the victim does not sustain severe personal injury"). In exchange, the State agreed to recommend that defendant be sentenced to seven years' imprisonment. The court ordered a presentence report on defendant,[9] and scheduled sentencing.

At defendant's sentencing hearing on September 18, 2009, the sentencing court grappled with the jail and gap-time credits to which defendant claimed to have been entitled. The parties first agreed that defendant was entitled to 519 days of jail credit for the period he had been held on the 1994 sexual assault, starting as of his April 16, 2008 arrest and continuing to the date of sentencing.[10] Acknowledging defendant's history of incarceration in the almost fifteen-year interval between the date of the 1994 sexual

---

[9] The presentence report recites that "[a]s an adult the defendant has twenty[-]nine (29) arrests. His adult court history is comprised of six prior indictable convictions. The present offense will represent the defendant's seventh indictable conviction. The defendant is a registered sex offender." That report also notes that defendant "also has ten (10) disorderly person convictions for which he was sentenced to jail terms, assessed fines only and probation on different occasions" and that he "has one outstanding bench warrant in Newark Municipal Court."

[10] The distinction between jail credit and gap-time credit is often quite significant: jail credit is awarded "for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence[,]" *R.* 3:21–8, and is credited as of the starting date or "front end" of the sentence, *Booker v. N.J. State Parole Bd.*, 265 *N.J.Super.* 191, 207, 625 *A.2d* 1153 (App.Div.1993), *aff'd*, 136 *N.J.* 257, 642 *A.2d* 984 (1994), whereas "gap-time credit is applied to the back end of the aggregated sentences, rather than the front end." *Meyer v. N.J. State Parole Bd.*, 345 *N.J.Super.* 424, 427–28, 785 *A.2d* 465 (App.Div.2001), *certif. denied*, 171 *N.J.* 339, 793 *A.2d* 717 (2002). Given the quantity of jail and gap-time credits at issue in this appeal in comparison with the sentence imposed and because defendant's sentence did not include a period of parole ineligibility, that distinction is, for present purposes, irrelevant.

assault for which he was being sentenced and the date of sentencing, the parties and the sentencing court then addressed the more difficult question: whether defendant was entitled to gap-time credits and, if so, in what amount.

As an initial observation, the sentencing court noted that it was inclined to award defendant gap-time credit for the period defendant had been incarcerated on both the 1995 endangering conviction and the joint period of incarceration defendant completed in 2004 based on the 2001 joint sentencing for the 1998 sexual assault and the 2001 drug offense. In opposition, the State asserted that such conclusion "essentially guts the DNA database act." Stating that "[t]he whole purpose of the act being to deter and detect crime through the use of DNA realizes that there cannot be a detection until a defendant has at least committed a second crime[,]" the State remarked that "[y]ou don't get into the computer unless . . . an initial crime is committed, then your DNA gets in the computer, and then a second crime comes up." The State urged that "[o]nce there is a detection the entire deterrent effect is lost . . . if the individual is given gap[-]time credit for th[e] time that he was . . . in custody."

In response, the sentencing court noted that "the [L]egislature created an issue here w[h]ere [defendant] may, in fact, profit from being subsequently incarcerated for two unrelated events." It explained, with seeming reluctance, that it was obliged to "enforce the law the way I am looking at it, and my understanding of gap[-]time credit is that statutorily, [defendant] falls within the statutory definition of gap[-]time." Inviting the State to seek appellate review of the question, the court concluded that, "as far as my reading of the gap[-]time statute, based upon the definitions and the strict construction of the statute, the defendant falls within it and is entitled to it." The court then sentenced defendant to seven years' incarceration, as provided in the plea agreement. However, because defendant was awarded 2,145 days of gap-time credit to be added to the earlier conceded 519 days of jail credit, the aggregate of those credits—2,664 days—exceeded the

seven-year term of incarceration (7 years × 365 days/year = 2,555 days) imposed. Save for his continued civil commitment under the SVPA, defendant was to walk free.

The State appealed and, in an unpublished decision, the Appellate Division affirmed. It noted that the State had "appeal[ed] from the award to defendant of 2,145 days of gap[-]time credits ... awarded because the sentence under review relates to a crime that occurred before the sentences resulting in those periods of incarceration were imposed and served." It explained that "[d]efendant's two prior sentences were imposed in April 1995 and March 2001 before defendant's DNA was matched with a DNA sample taken from the victim of this crime in 1994 [and that h]e was charged with this offense in [April] 2008." It summarized the State's contentions on appeal succinctly: "if defendant receives the credits, even against 'the back end' of the sentence in a case like this involving a 1994 crime, defendant, who was subsequently sentenced in 1999 and 2001, will end up with no additional time to serve and will receive, in essence, a 'free crime.' " (citation omitted).

The Appellate Division rejected the State's reasoning, explaining:

> But that is the consequence of *N.J.S.A.* 2C:44–5b(2), as it is presently codified. The State is correct: that provision was designed to encourage multiple dispositions—to create an incentive for prosecutors to resolve all pending matters simultaneously—so defendants would not be penalized by the delay between sentences and other prosecutions and could serve their time and move on with a hopefully more beneficial life. *See State v. Guaman,* 271 *N.J.Super.* 130, 135–34 [638 *A.*2d 162] (App.Div.1994). But it also was designed to credit defendants with time spent in custody between one sentence and a subsequent sentence imposed for a prior crime because, as a matter of public policy, the defendant should have benefited by the work and experience in the "correctional" facility, and because the Model Penal Code encouraged a limit on cumulative sentences. *Ibid.See also State v. Franklin,* 175 *N.J.* 456, 462–64, 815 *A.*2d 964 (2003); *Booker v. N.J. State Parole Bd.,* 136 *N.J.* 257, 260, 270, 642 *A.*2d 984 (1994).

Relying on *State v. Ruiz,* 355 *N.J.Super.* 237, 241, 809 *A.*2d 890 (Law Div.2002), the panel highlighted that gap-time credits must be awarded "whenever '(1) the defendant has been sentenced previously to a term of imprisonment; (2) the defendant is sen-

tenced subsequently to another term of imprisonment for an offense; and (3) both offenses occurred prior to the imposition of the first sentence to a term of imprisonment.'" (quoting *State v. Carreker*, 172 *N.J.* 100, 105, 796 *A.*2d 847 (2002)). Concluding that "[t]he statute, as written, must be 'literally' applied[,]" (quoting *Guaman, supra,* 271 *N.J.Super.* at 134, 638 *A.*2d 162), the panel suggested that, shy of legislative action, the irony of the result it had reached could be avoided by increased attention in two separate spheres: more astute plea bargaining practices, and consideration by sentencing courts of "the real time to be served and parole consequences of a plea recommendation and sentence."[11]

The State sought certification, which was granted. *State v. L.H.,* 204 *N.J.* 41, 6 *A.*3d 443 (2010). The Attorney General applied for and was granted leave to file a brief as amicus curiae. The State also sought leave to expand the record, which also was granted.

## II.

The State describes the error complained of in stark terms. According to the State, in the factual context of this appeal, the Appellate Division's affirmance of the grant of gap-time credits to defendant is in error "because it completely discounts the legislative aims of the gap-time credit statute and the DNA Act in favor of a mandatory award of credits which results in a free crime to this defendant, a dangerous recidivist." In the State's view, the Appellate Division's mechanistic application of the gap-time statute frustrates other, legitimate legislative aims, is contrary to the

---

[11] During argument before it, the Appellate Division requested that the parties submit supplemental briefs on two questions: "(a) whether the state and federal *Ex Post Facto* Clauses prohibit th[e c]ourt from applying the [DNA Act] to prohibit an award of credits to this defendant pursuant to the gap-time credit statute, *N.J.S.A.* 2C:44–5(b)(2); and (b) whether the DNA Act should apply retroactively to prohibit an award of gap-time credits to this defendant and others similarly situated." In light of our resolution of this appeal, we need not address those questions.

interest of justice, does not comport with any reasonable expectation held by defendant, and violates principles of equity.

Relying on the arguments he presented to the Appellate Division, defendant asserts that he plainly was entitled to the gap-time credits awarded him. He advances "four reasons that gap-time should be applied in this case[,]" noting that "none of the rationales advanced by the State should prevent its application." First, in defendant's view, although the reasons for a delay between the occurrence of a crime and its punishment are "complicated[,]" he nonetheless questions—solely based on the passage of time—the diligence law enforcement brought to bear to detect who had committed the 1994 sexual assault. Defendant further urges that "[t]he second rationale . . . for a strict application of gap-time credits is the desire, motivated by a wish to promote judicial economy, to avoid factual findings regarding the extent to which the delays are the fault of the State." Third, defendant claims, "principles of statutory construction require a strict reading of a criminal statute." And, fourth, he argues that "a literal application of the gap-time statute allows parties to bargain with more perfect information[,]" a rationale defendant designates as "vitally important in this case[.]"

Amicus, the Attorney General, argues that "[t]he application of gap-time credits [in the circumstances presented in this appeal] is contrary to the purposes of" *N.J.S.A.* 2C:44–5(b)(2). She identifies those purposes as two-fold: "to promote the fair aggregation of sentences for charges pending at the same time, and [to] seek[ ] to eliminate or minimize the manipulation of charges by the prosecution which could deny a defendant the benefit of concurrent sentences." She describes the award of gap-time credits to defendant as one that "rewards a defendant for being a recidivist, thwarts the purpose of the CODIS [12] DNA database, and neutral-

---

[12] The acronym "CODIS" stands for the "Combined DNA Index System," and is a software program [designed, implemented and maintained by the Federal Bureau of Investigation] containing a collection of data files that

izes sentences on cold cases, like this one, where an offender may end up serving no additional time for those convictions." The Attorney General urges that "[t]he gap-time statute should not be interpreted in such a fashion."

## III.

### A.

The threshold question in this appeal is determining the appropriate standard of review. The sentencing court's determination to grant defendant gap-time credit for his periods of incarceration for the 1995 endangering, the 1998 sexual assault and the 2001 drug offense was a conclusion of law which, on appeal, is subject to de novo review. *State v. Brown*, 118 *N.J.* 595, 604, 573 *A.*2d 886 (1990) ("If the trial court acts under a misconception of the applicable law, however, the appellate court need not give such deference."); *State v. Jefferson*, 413 *N.J.Super.* 344, 352, 994 *A.*2d 1067 (App.Div.2010) ("For purposes of [appellate] review, we accept the trial court's findings of fact, but we need not defer to the trial court's legal conclusions reached from the established facts." (citing *Brown, supra*, 118 *N.J.* at 604, 573 *A.*2d 886)). The review of the sentencing court's determination, therefore, is plenary.

---

permit comparison of biological evidence recovered at crime scenes to DNA profiles of known offenders. The system has two main data files, referred to as indexes, to accomplish this task. The Forensic Index contains DNA profiles developed from biological evidence recovered at crime scenes, where the donor of the biological material is believed to be the perpetrator of the crime. The Convicted Offender Index consists of DNA profiles developed from known samples taken from qualified convicted offenders. Each individual state is charged with determining what crimes qualify for CODIS inclusion. The Forensic Index and the Convicted Offender Index are searched against each other, and investigative leads are generated. Additionally, the Forensic Index is searched against itself, whereby matches link crime scenes.

[*A.A. ex rel. B.A. v. Attorney General of N.J.*, 189 *N.J.* 128, 132, 914 *A.*2d 260 (2007).]

## B.

Discussion of the gap-time statute, *N.J.S.A.* 2C:44–5(b), unfortunately has tended to generate much heat, but surprisingly little light. Incorporated as part of the original 1978 adoption of the New Jersey *Code of Criminal Justice, see L.* 1978, *c.* 95, § 2C:44–5(b), that statutory provision, with minor modifications,[13] now reads:

> (b) Sentences of imprisonment imposed at different times. When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence, other than an offense committed while in custody:
>
> (1) The multiple sentences imposed shall so far as possible conform to subsection a. of this section; and
>
> (2) Whether the court determines that the terms shall run concurrently or consecutively, the defendant shall be credited with time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be served; and
>
> (3) When a new sentence is imposed on a prisoner who is on parole, the balance of the parole term on the former sentence shall not be deemed to run during the period of the new imprisonment unless the court determines otherwise at the time of sentencing.

This appeal specifically addresses the application of subsection (b)(2) of *N.J.S.A.* 2C:44–5, which

> requires that a defendant who has been sentenced to imprisonment and is subsequently sentenced to another term for an offense committed prior to the imposition of the former sentence (other than an offense committed while in custody) be "credited" at the time of the second sentence for so much of the term of imprisonment as the defendant has served on the prior sentence.
>
> [*Booker v. N.J. State Parole Bd.*, 136 *N.J.* 257, 259, 642 *A.*2d 984 (1994).]

Thus, for purposes of this appeal, we focus exclusively on subsection (b)(2) and its effect.

That subsection has engendered much criticism in its application. For example, the Appellate Division, partially quoting without attribution Sir Winston Churchill's description of Russia, has noted that "[a]t the present time, gap-time credits remain 'a riddle

---

[13] Those modifications, which are not relevant to the issues presented in this appeal, are summarized in Cannel, *New Jersey Criminal Code Annotated,* Comment 1 on *N.J.S.A.* 2C:44–5 (2010).

wrapped in a mystery inside an enigma.'" *State v. Edwards,* 263 *N.J.Super.* 256, 262, 622 *A.2d* 919 (App.Div.1993).[14] It also has remarked that

> [t]he mere mention of gap[-]time credits makes stolid judges tremble. The law books contain opinion upon opinion dealing with this arcane subject, and legislative relief is not in sight. As we write this opinion, earnest young lawyers continue to devise their tedious arguments of insidious intent, thus adding to our torment. It is a judicial nightmare. Perhaps it is time for us to admit defeat and tell the Legislature in plain terms that we do not know what that body intended when it enacted the gap[-]time statute. With our respect, we commend the matter to the Legislature for its consideration.
>
> [*Guaman, supra,* 271 *N.J.Super.* at 135, 638 *A.2d* 162.]

Later that same year, this Court echoed the latter part of those sentiments: that approximately a decade and one-half after the statute's adoption, it should have been revisited by the Legislature. *Booker, supra,* 136 *N.J.* at 268, 642 *A.2d* 984.

Like the portion of Churchill's description that was not cited by the Appellate Division, "perhaps there is a key" to deciphering the gap-time statute. In that vein, *State v. Franklin* more recently has toned down the rhetoric this statute has generated, proclaiming simply and quite accurately that "'[g]ap-time' is a subject more difficult to articulate than understand; it need not send shivers of fear down the spines of those who practice criminal law." 175 *N.J.* 456, 461, 815 *A.2d* 964 (2003). *Franklin* repeated clearly the gap-time statute's overall purposes: "to avoid manipulation of trial dates to the disadvantage of defendants and to put defendants in the same position that they would have been had the two offenses been tried at the same time." *Id.* at 462, 815 *A.2d* 964 (citations and internal quotation marks omitted). *Franklin* also explained that "[t]he intent of the statute is to counteract any

---

14 Churchill's quote was part of a broadcast on October 1, 1939, shortly after the start of World War II when Russia's entry into the war was not yet determined and the extent of its non-aggression pact with Germany had not been disclosed completely. In full, he said: "I cannot forecast to you the action of Russia. It is a riddle wrapped in a mystery inside an enigma, but perhaps there is a key. That key is Russian national interest." Winston Churchill, *His Wit and Wisdom; Selections from his Works and Speeches* 136 (Hyperion Books).

dilatory tactics of the prosecutor in pursuing a conviction for an earlier offense after a defendant has been sentenced on another offense." *Ibid.* (citations and internal quotation marks omitted). Referencing *Carreker, supra,* 172 *N.J.* at 105, 796 *A.2d* 847, *Franklin* set forth the applicable test in plain terms:

> The three-prong test for entitlement to gap-time credit requires a showing that (1) the defendant has been sentenced previously to a term of imprisonment, (2) the defendant is sentenced subsequently to another term, and (3) both offenses occurred prior to the imposition of the first sentence. If those elements are established, then the defendant must be awarded credit for the time served on the prior sentence when the permissible aggregate length of the term or terms is determined.
>
> [*Franklin, supra,* 175 *N.J.* at 462, 815 *A.2d* 964 (citations and internal quotation marks omitted).]

Context, however, is important. The primary purpose of *N.J.S.A.* 2C:44–5(b)(2) is to "establish[ ] . . . a limit on the cumulation of consecutive sentences[,]" *Richardson, supra,* 110 *N.J.* at 243, 540 *A.2d* 1246 (citation and internal quotation marks omitted), and that

> [t]o limit such cumulation, when sentences for multiple offenses are imposed on different occasions, [the gap-time statute] restricts the sentencing authority of courts by requiring them to apply to the later sentence a credit for time served between the two sentencing hearings if the later sentence is for a crime committed prior to the earlier sentence.
>
> [*Booker, supra,* 136 *N.J.* at 260, 642 *A.2d* 984.]

That statutory purpose is refined further: "[w]hat the [gap-time statute] had in mind, then, in speaking of a 'credit' was in fact a limit on the maximum term of imprisonment that could be imposed on the sentencing occasion, *not a declaration that the time served on the prior sentence be regarded as time served on the current sentence." Ibid.* (emphasis supplied).

Viewed through that prism, the gap-time statute becomes straightforward in its application. By its explicit terms, an award of gap-time credit under *N.J.S.A.* 2C:44–5(b)(2) is triggered when a sentencing court is confronted with a specific question: whether "the terms [of incarceration to be imposed] shall run concurrently or consecutively[.]" That question presupposes that the defendant to be sentenced presently is incarcerated on a later-in-time-but-

earlier-sentenced-offense or is facing incarceration for more than one offense at one time; it also assumes that the difference in sentencing dates is not a function of the improper manipulation of trial dates. Therefore, the plain language of the gap-time statute limits its application only to those circumstances when two factors coalesce: the defendant is then serving a sentence, *and* the sentencing court is determining whether the new sentence for an offense that occurred before the imposition of the defendant's current sentence is to be concurrent or consecutive to that current sentence.

That conclusion—that the gap-time statute is triggered only when the sentencing court is determining whether to impose concurrent or consecutive sentences—is faithful to its genesis. In October 1971, when the New Jersey Criminal Law Revision Commission unanimously recommended the adoption of what became the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 104–9, it also described its reasoning. In the commentary accompanying its report, the Commission explained succinctly that *N.J.S.A.* 2C:44–5(b) "is addressed to the problem of a sentence of imprisonment imposed upon a person *who is already serving a term* under a sentence imposed for an earlier offense." 2 *Final Report of the New Jersey Criminal Law Revision Commission,* commentary to § 2C:44–5, at 336 (1971) (emphasis supplied). Therefore, the conclusion here presented aligns perfectly with the statute's origins.

Having concluded that it is a prerequisite that a defendant currently be serving a sentence of incarceration before the gap-time statute becomes operative, *State v. Lawlor,* 222 *N.J.Super.* 241, 536 *A.*2d 766 (App.Div.1988), *State v. Ruiz,* 355 *N.J.Super.* 237, 809 *A.*2d 890 (Law Div.2002), *State v. French,* 313 *N.J.Super.* 457, 712 *A.*2d 1281 (Law Div.1997), and like cases must be specifically disavowed to the extent that they may have reasoned, in respect of the application of *N.J.S.A.* 2C:44–5(b)(2), that a defendant "need not be currently serving a sentence of imprisonment for gap-time to apply so long as both offenses occurred prior

to the first sentence[,]" *Ruiz, supra,* 355 *N.J.Super.* at 242, 809 *A.*2d 890. The better, more cogent temporal view is expressed simply in *State v. Garland:* " 'gap-time credit', which relates to time spent in imprisonment as a result of a sentence previously imposed and has no application unless defendant, *while incarcerated,* is sentenced for an offense occurring before the prior sentence." 226 *N.J.Super.* 356, 361, 544 *A.*2d 417 (App.Div.) (emphasis supplied), *certif. denied,* 114 *N.J.* 288, 554 *A.*2d 845 (1988).

That said, it must be emphasized that the requirement that a defendant in fact be serving a sentence at the time that he seeks gap-time credits for an earlier offense where there has been an intervening sentence cannot be voided by the act or failure to act of the State. It bears repeating that the gap-time statute is designed "to avoid manipulation of trial dates to the disadvantage of defendants and to put defendants in the same position that they would have been had the two offenses been tried at the same time." *Carreker, supra,* 172 *N.J.* at 105, 796 *A.*2d 847 (quoting *Booker, supra,* 136 *N.J.* at 260, 642 *A.*2d 984 (internal quotation marks omitted)). As a prophylactic measure, any improper attempt to manipulate trial or sentencing dates in order to deny a defendant the benefit of the gap-time statute should trigger its automatic application.

Thus defined, one must turn, then, to the application of those principles to this appeal.

## C.

Chronologically, the 1994 sexual assault obviously occurred before defendant committed the 1995 endangering, the 1998 sexual assault, or the 2001 drug offense; defendant was convicted, sentenced and completed his various incarcerations on the 1995 endangering, the 1998 sexual assault, and the 2001 drug offense *before* he pled guilty to and was to be sentenced for the 1994 sexual assault. Presumptively, his sentencing for the 1994 sexual assault satisfied the three-prong test for gap-time credit described

in *Franklin:* (1) defendant had been sentenced previously to a term of imprisonment for later-in-time offenses (the 1995 endangering, the 1998 sexual assault, and the 2001 drug offense), (2) defendant was being sentenced subsequently in respect of the first-in-time offense (the 1994 sexual assault), and (3) the first-in-time offense (the 1994 sexual assault) occurred prior to the imposition of sentence in the later-in-time offenses (the 1995 endangering, the 1998 sexual assault, and the 2001 drug offense). *Franklin, supra,* 175 *N.J.* at 462, 815 *A.*2d 964.

Yet, when he was sentenced for his first-in-time crime—the 1994 sexual assault—defendant was not then incarcerated pursuant to any of his prior sentences. That fact, one not present in *Franklin,* triggers the application of the clarification of *N.J.S.A.* 2C:44–5(b)(2) set forth above. Although the crime for which defendant was being sentenced—the 1994 sexual assault—preceded in time his later convictions and sentences, that fact is not dispositive. What forecloses the application of the gap-time statute is that, at the time of sentencing for the 1994 sexual assault in 2009, defendant was not gap-time eligible: he was not then imprisoned pursuant to a later-occurring crime. At that point, whether the sentence to be imposed for the 1994 sexual assault was to be concurrent or consecutive to the sentences imposed on defendant's later-in-time-but-earlier-sentenced crimes simply was not before the sentencing court for the obvious reason that defendant already had served those periods of imprisonment to completion. Hence, defendant's earlier incarcerations for his later-in-time-crimes do not qualify for gap-time credit in respect of defendant's sentence on the 1994 sexual assault.[15]

Defendant contends, however, that the decade-and-a-half delay in his arrest, conviction and sentence on the 1994 sexual assault

---

[15] The principle that a defendant must be incarcerated within New Jersey's criminal justice system in order to claim gap-time credit under *N.J.S.A.* 2C:44–5(b)(2) animated the decision in *Carreker, supra,* 172 *N.J.* at 103, 796 *A.*2d 847, which, in a like context, denied gap-time credit for a period of incarceration on an out-of-state sentence.

was due to State inaction and, hence, it was the functional equivalent of manipulation warranting a gap-time award. That contention is without merit. The record is clear that, when the 1994 sexual assault occurred, there was no DNA sample from defendant against which a comparison could have been made; a sample of defendant's DNA was not provided until defendant's conviction on the 1998 sexual assault. Even then, the task of comparing DNA in dormant or "cold" cases against an avalanche of DNA samples then being collected under the DNA Act was daunting. In 2002, the Attorney General started a comprehensive comparison program that, by 2004, yielded a match between defendant's DNA sample and the DNA retrieved and secured from the 1994 sexual assault. By that point, ten years had elapsed since defendant had committed the 1994 sexual assault, and the State was required to identify the whereabouts of both defendant and his victim. Once defendant and his victim were located, the State promptly sought to confirm its findings via a new DNA sample from defendant and by comparing that new sample against the DNA from the 1994 sexual assault. When that comparison confirmed the match, defendant was arrested.

It is far too ironic for defendant to claim that the State somehow manipulated his prosecution to deny him the benefit of gap-time credit when defendant, well aware of his acts in 1994, remained at large. Although some no doubt may claim that the State could have acted with more alacrity, that claim, in the circumstances presented in this appeal, cannot rise to the level of manipulation necessary to upend the carefully formulated sentencing scheme embodied in *N.J.S.A.* 2C:44–5(b)(2) and grant to defendant unearned and unwarranted gap-time credits.

Based on the foregoing, the conclusion is inescapable: the sentencing court erred as a matter of law when it awarded defendant 2,145 days of gap-time credit which, when added to the 519 days of jail credit defendant in fact had earned, entitled him to a free "pass" on the 1994 sexual assault. That erroneous award and the reasoning that undergirds it runs contrary to the funda-

mental notions that inform our system of criminal justice, a core principle of which is that " 'there can be no free crimes in a system for which the punishment shall fit the crime[.]' " *State v. Miller,* 205 *N.J.* 109, 128, 13 *A.*3d 873 (2011) (quoting *State v. Yarbough,* 100 *N.J.* 627, 630, 498 *A.*2d 1239 (1985)). The Law Division's and the Appellate Division's contrary conclusion therefore must be rejected, and the case remanded to the Law Division for an order vacating the entire award of gap-time credits in this case and remanding defendant to serve the sentence imposed, and for the entry of a corrected judgment of conviction therein. That conclusion "is reflective of a sensible reading of the statute and congruent with other aspects of [the *Code of Criminal Justice* ], is consistent with the purpose of the gap-time provision, and is consonant with the strong public policy favoring uniformity in the administration of our criminal justice rules." *Carreker, supra,* 172 *N.J.* at 116, 796 *A.*2d 847. In doing so, "[a]bove all, we have endeavored to interpret the statute consistent with the Legislature's intent in enacting it." *Ibid.*

## IV.

The judgment of the Appellate Division is reversed, and the case is remanded to the Law Division (1) for the entry of an order (a) vacating the entire award of 2,145 days of gap-time credits originally granted on September 18, 2009 and (b) remanding defendant L.H. to serve the sentence imposed on that date without any credit for gap time; and (2) for the entry of a corrected judgment of conviction reflecting no days of gap-time credit.

*For concurrence*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO and HOENS—6.

*Opposed*—None.